Feliciano c/p Graciano Leduc Ocasio, recurrente, *v.* El Registrador de la Propiedad de Humacao, recurrido.

Número 1308.

*Sometido:* 7 de abril de 1954. *Resuelto:* 28 de diciembre de 1954.

*Francisco González, Jr.,* y *Cruz Ortiz Stella,* abogados del recurrente; el Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del Tribunal.

Por escritura pública otorgada en Humacao el 21 de octubre de 1953, el recurrente adquirió de Teodoro Aguilar Mora un pequeño solar situado en el barrio Río Abajo, de ese municipio, por la suma de $300. En la cláusula primera de ella se hizo constar:

"Que don Teodoro Aguilar y Mora es dueño privativamente y en pleno dominio de la siguiente finca:

"URBANA: Parcela de terreno radicada en el barrio de Río Abajo, jurisdicción de Humacao, en las afueras de esta población compuesta de dos mil trescientos sesenta metros cuadrados de terreno llano para solares, midiendo al norte veinte metros lineales, en colindancia con terrenos de la Escuela 'Ponce de León,' al sur mide otros veinte metros, en colindancia con el camino vecinal que de dicha población de Humacao conduce al río y a las fincas de don Ramón Fulladosa, Doña María Rodríguez de Bustelo y don Antonio Aguilar; al este mide ciento diez y ocho metros lineales, colindando con terrenos de la escuela 'Ponce de León,' y al oeste mide otros ciento diez y ocho metros de largo, colindando con una faja de terreno de diez metros de ancho perteneciendo a la finca principal de doña Concepción Cabrera, y cuya faja se destina hoy al tránsito público y se conoce con el nombre de calle 'Ponce de León.' De esta parcela de terreno se han segregado varios solares vendidos a distintas personas, habiendo quedado reducida su cabida a doscientos cuarenta metros cuadrados, o sean, doce metros por el frente, que es el oeste, en colindancia con la calle de su situación; doce metros por la espalda, que es el este, en colindancia con terrenos de la escuela, digo, escuela 'Ponce de León'; veinte metros por la derecha entrando, que es el sur, en colindancia con solar segregado de esta finca, y que es hoy de Doña Resurrección Pastrana; y veinte metros por la izquierda entrando, que es el norte, en colindancia con otro solar segregado de esta finca y que es hoy de la propiedad de doña Isidra, conocida por Dora Cardona.

Inscrita al folio ciento treinta y cinco vuelto del tomo sesenta y uno de Humacao, finca número dos mil veinte, inscripción segunda."

Presentada la escritura al Registro de la Propiedad para su inscripción, el registrador inscribió la venta haciendo

"constar el defecto subsanable de que en este documento no se dijo la cabida total segregada de la finca para determinar la parte restante." De esa resolución el adquirente recurre ante nos.

■■ El Registrador se basó principalmente en el caso de *Ruiz* v. *Torres*, 61 D.P.R. 1. Indica ahora en su alegato que:

"Deseamos hacer constar que al estudiar el documento objeto del DEFECTO SUBSANABLE y darnos cuenta de que no se habían hecho constar las segregaciones practicadas, inmediatamente nos dimos cuenta de que existía una gran diferencia entre las segregaciones que aparecen de acuerdo con el Registro y lo que se estaba vendiendo como resto de la finca, lo que nos hizo pensar que esto puede dar motivo a discrepancias en el futuro, y vamos a decir por qué . . . Imagínense ustedes que haya otras ventas efectuadas que también proceden de la finca principal y que no pueden en forma alguna aparecer en el Registro porque las escrituras no se han traído a inscribir; pues al inscribirse los 240 metros como resto, sin hablarse del total de las segregaciones, puede darse el caso que cuando vengan a inscribirse exista únicamente balance para inscribir parte del terreno, creando por consiguiente una situación más grave.

"   .        .        .        .        .        .        .

"Como podrá comprobarse por la certificación que se acompaña de lo que resulta del Registro y que muy respetuosamente sometemos a este Honorable Tribunal y la hacemos parte de este alegato, la finca principal se componía de 2,360 metros cuadrados, de la cual aparece haberse segregado hasta la fecha la cantidad de 1,817 metros cuadrados (8 solares); quedando de acuerdo con el Registro un remanente de 543 metros cuadrados. ¿Existe o no existe disparidad entre lo que dice el documento, ser 240 metros cuadrados el remanente, y lo que verdaderamente aparece del Registro?"

Está en un error el registrador. En la escritura presentádale se hace constar con la mayor claridad el área superficial de la finca principal, con sus linderos por los cuatro puntos cardinales, así como el área total del solar segregado, con sus medidas y colindancias por el norte, sur, este y oeste. *Cf. Municipio de Salinas* v. *Registrador*, 52 D.P.R. 79, 81; *Rosado* v. *Registrador*, 68 D.P.R. 594, 599. Se hace constar

en esa escritura asimismo que de la parcela principal se han segregado varios solares, que esa finca principal ha quedado reducida a 240 metros y que este remanente es el que se vende. A los fines del registro ello bastaba. No era necesario que en la escritura se indicaran o describieran específicamente todas y cada una de las segregaciones que de la finca principal se habían efectuado previamente. El hecho de que según el registro el remanente no inscrito de la finca principal fuera mayor que el solar que se vende al recurrente, nada significaba. Lo lógico era suponer, en un caso como el presente, que la diferencia entre la superficie que aparece del registro y el área del solar adquirido por el recurrente había sido previamente vendida a cualquier otra persona y que ésta no había inscrito aún su título. Ello no puede perjudicar en forma alguna los derechos del adquirente.

En el caso de *Ruiz* v. *Torres*, supra, Vidal Montalvo Rodríguez tenía inscrita a su nombre en el Registro de la Propiedad de Utuado una finca de 62.50 cuerdas. A virtud de cinco escrituras distintas él segregó de dicha finca y vendió seis parcelas de 18, 9, 3, 3, 7 y 13.50, respectivamente, quedando reducida la finca principal a una cabida de nueve cuerdas. El mismo día en que se hicieron dichas segregaciones, Montalvo Rodríguez otorgó escritura a favor del recurrente Ruiz con el propósito de venderle las nueve cuerdas que aún le quedaban como remanente de la finca original de 62.50 cuerdas. En dicha escritura se describe el inmueble objeto de la compraventa por sus distintos puntos cardinales. Presentada la escritura al registro, su inscripción fué denegada "porque en ella no se describe la finca principal de la que se dice es resto la de nueve cuerdas . . ." En la opinión emitida confirmamos la nota recurrida y, luego de indicar que las segregaciones habían sido inscritas como fincas separadas a nombre de los respectivos adquirentes, hicimos constar que "en el presente caso no se trata de una nueva segregación y sí de la venta del remanente de la finca número 7,521 cuya cabida ha sido reducida a nueve cuerdas. La descripción que

se hace en la escritura de la finca objeto de la venta no corresponde con la descripción que de la finca número 7,521 aparece en el registro. En éste no aparece inscrita ninguna finca de nueve cuerdas a favor del vendedor, con las colindancias que en la escritura se especifican."

El caso de *Ruiz* v. *Torres*, supra, sin embargo, fué revocado expresamente por el de *Piñero* v. *Registrador*, 75 D.P.R. 455. En este último dijimos: ". . . entendemos que la doctrina sentada en el caso de *Ruiz* v. *Torres*, supra, es incompatible con la establecida en el caso posterior de *Rosado* v. *Registrador*, supra, debiendo ser revocado el caso de *Ruiz* v. *Torres*." Sin embargo, un estudio ulterior de la cuestión nos convence de que tal revocación no estuvo justificada, puesto que el caso de *Ruiz* v. *Torres* fué bien resuelto y era claramente distinguible del de *Rosado* v. *Registrador*.

Ya conocemos cuáles fueron los hechos envueltos en el de *Ruiz* v. *Torres*, así como la forma en que la cuestión fué resuelta por este Tribunal. Veamos, pues, el de *Rosado* v. *Registrador*, supra. En él los esposos García-Carreras adquirieron una finca de 195.99 cuerdas, parte de la cual radicaba en Trujillo Alto, de la circunscripción para aquel entonces del Registro de la Propiedad en San Juan, y parte en Caguas dentro de la jurisdicción del Registro de la Propiedad del mismo nombre. De esa finca dichos esposos segregaron y vendieron a Felipe S. Vidal 97.995 cuerdas, de las cuales 68.995 cuerdas estaban situadas en Caguas y el resto en Trujillo Alto. Ambas escrituras fueron inscritas en los registros de la propiedad de Caguas y San Juan sin hacerse constar los linderos de la porción correspondiente a cada registro. Posteriormente Felipe S. Vidal agrupó la finca adquirida de los esposos García-Carreras con otra de su propiedad radicada en Caguas, formándose a virtud de esa agrupación una finca de 123.145 cuerdas. En la misma escritura de agrupación Vidal vendió la finca así agrupada al recurrente Rosado Fussá. Al ser presentada al Registro por Fussá su escritura de adquisición, el registrador de Caguas inscribió la misma, pero al

presentarse dicha escritura al registrador de la propiedad de Río Piedras, al cual corresponde en la actualidad el pueblo de Trujillo Alto, el registrador inscribió "con el defecto subsanable de no describirse la parte de la finca que radica en el indicado pueblo de Trujillo Alto." Resolvimos que de conformidad con la Ley Hipotecaria "las escrituras sujetas a registro en relación con fincas radicadas en la circunscripción de dos o más registros, deben expresar el área y los linderos de las porciones que correspondan a cada uno de éstos," y que "la falta de linderos no se considera motivo bastante para denegar la inscripción, siendo ése un defecto subsanable." El caso de *Rosado* v. *Registrador*, en su consecuencia, no revocó el de *Ruiz* v. *Torres*. En uno y otro estaban envueltas situaciones completamente distintas: en el de *Ruiz* v. *Torres*, repetimos, se vendió el remanente de una finca y en la escritura de enajenación no se describió en forma alguna la finca principal. Siendo ello así, en dicho caso el registrador procedió acertadamente al denegar la inscripción del remanente. En el de *Rosado* v. *Registrador* se trataba, no obstante, como hemos visto, de una finca agrupada que en parte radicaba en la circunscripción de un registro y en parte en la circunscripción de otro. Como en la escritura no se hicieron constar el área y los linderos de la porción correspondiente a cada registro, decidimos que lo procedente era inscribir con defecto subsanable.

Por otro lado, en el de *Piñero Durán* v. *Registrador* se presentó al Registro de la Propiedad de Río Piedras para su inscripción una escritura de compraventa de una finca radicada en el barrio Sabana Llana, del término municipal de Río Piedras. En la escritura se hizo constar que la finca objeto de la compraventa era el remanente de una serie de segregaciones hechas de una finca principal de una cuerda y 10 centésimos de otra. En esa escritura se describió la finca principal, con sus colindancias "pero no se describieron los linderos del remanente objeto de la venta." El registrador denegó la inscripción de la escritura y tomó en su lugar ano-

tación preventiva. Tal actuación del registrador fué errónea, pues a tenor de lo resuelto previamente en el caso de *Rosado* v. *Registrador*, supra, "la falta de linderos no se considera motivo bastante para denegar la inscripción, siendo ése un defecto subsanable." El caso de *Piñero* pudo fundarse, por tanto, exclusivamente en lo dicho previamente en el de *Rosado* v. *Registrador*, y a virtud del mismo revocarse la nota recurrida y ordenarse la inscripción solicitada, con defecto subsanable.

En lo que sí fué demasiado lejos este Tribunal en el caso de *Ruiz* v. *Torres* fué al expresar a la página 4 del mismo que: "La práctica corriente y más aconsejable es la de describir la finca original tal y como aparece del registro; *hacer constar las segregaciones que se hubieren practicado, para poder determinar con exactitud a cuánto ha quedado reducida la cabida del inmueble;* y, por último, vender el remanente de la finca, haciendo constar sus colindancias." (Bastardillas nuestras.) Decimos que fuimos demasiado lejos al expresarnos en esa forma porque, como veremos en seguida, cuando de una finca principal se hacen varias segregaciones y finalmente se vende el remanente, al venderse tal remanente no es necesario "hacer constar las segregaciones que se hubieran practicado" previamente. Ésa es precisamente la cuestión envuelta en este recurso.

Según el art. 65 de la Ley Hipotecaria, conforme el mismo fué enmendado por la Ley núm. 20 de 9 de julio de 1936 (Ses. Extr., pág. 153):

"Serán faltas subsanables las que afecten a la validez del mismo título, sin producir necesariamente la nulidad de la obligación en él constituída."

No vemos en verdad por qué al efectuarse la enajenación del remanente de la finca principal, el hecho de no especificarse el área de las distintas segregaciones hechas a la finca principal puede afectar la validez del título. Éste es perfectamente válido y, en lo que a la venta de tal remanente concierne, se inscribe como el de una finca separada.

El tratadista Roca Sastre en el tomo 2 de su obra sobre Derecho Hipotecario nos dice a las págs. 123 a 127 que la segregación de entidades hipotecarias "consiste en la *separación* de una parte de una finca inmatriculada, para formar por sí sola finca independiente;" y que "la segregación . . . origina el nacimiento de una nueva entidad hipotecaria." No se trata en este recurso, sin embargo, de una segregación. Tampoco de la división o partición de la finca principal. Tal división o partición, según Roca Sastre (págs. 127, 128) "tiene lugar cuando la totalidad de una finca inmatriculada *se divide en dos o más suertes o porciones* . . . En cuanto a los requisitos para la división es necesario que en la escritura correspondiente se describan todas las diferentes parcelas en que se divida la finca, ya que todas ellas pasan a formar fincas nuevas, sin que de la finca matriz quede resto alguno inscrito." No es posible argüir en este caso que ha habido una división o partición de la finca. Claramente se trata aquí de una finca principal, de la cual sucesivamente se han hecho varias segregaciones y de la que finalmente se vende el remanente que es objeto de la inscripción envuelta en este recurso. (¹)

El no menos ilustre tratadista Morrel y Terry, nos dice a la pág. 91 del tomo 2, de la segunda ed. de sus Comentarios a la Legislación Hipotecaria que:

"Cuando se enajenen varias porciones de terreno tomadas de determinada finca, como partes separadas y con linderos diferentes, deben considerarse como fincas distintas."

Y que:

". . . *el trozo de terreno que queda de una finca, después de segregar de la totalidad otros varios, constituye una finca.*" (Bastardillas nuestras.)

Usando ese razonamiento podemos afirmar que cuando en el presente caso Aguilar y Mora vendió al recurrente el remanente de la finca principal, lo que vendió fué una finca. Des-

-----

(¹) A virtud de enmienda reciente, en España se requiere ahora que se describa la porción restante de la finca principal de la cual se hace la segregación.

cribiéndose éste (el remanente) por sus cuatro puntos cardinales y describiéndose también por sus cuatro puntos cardinales la finca principal, además de hacerse constar el área de una y otra, lo procedente era inscribir sin defecto de clase alguna la finca objeto de la enajenación. Al mismo efecto véanse Morell, ob. cit., Apéndice al Volumen 1, págs. 237 a 240, así como Casso Romero, Derecho Hipotecario o del Registro de la Propiedad, cuarta ed. (1951), pág. 246.

Para terminar diremos que al calificar una escritura, el registrador debe tomar en consideración lo que de la faz de la misma resulte, no estando obligado a examinar las inscripciones anteriores del registro, ni a estudiar otras escrituras no complementarias de la que se trata de inscribir. Arts. 18, Ley Hipotecaria y 77 del Reglamento; *Sucn. de Santos Collazo* v. *Registrador*, 41 D.P.R. 576, 578.

*Debe revocarse la nota recurrida y efectuarse la inscripción solicitada sin defecto alguno.*

El Juez Asociado Sr. Sifre está conforme con el resultado.

---

Opinión disidente del JUEZ ASOCIADO SR. NEGRÓN FERNÁNDEZ.

La enajenación del remanente de una finca, luego de segregada varias porciones de la misma, no constituye una segregación, sino la venta de la finca principal—unidad que tiene personalidad registral propia. Lo que en el caso de autos vendió Teodoro Aguilar Mora al aquí recurrente fué la unidad registral que a su nombre aparecía del registro, con la cabida consignada en el título inscrito, reducida en la extensión de las segregaciones previas anotadas al margen de la inscripción. De acuerdo con esas notas marginales la cabida registral era, a la fecha de presentación de la escritura que motiva el presente recurso, de 543 metros cuadrados. Aguilar Mora no estaba segregando y vendiendo 240 metros de la finca, según su cabida registral. Estaba vendiendo la finca misma. En la escritura, luego de describir la finca con su cabida original, se limitó a consignar que de dicha parcela "se han segregado varios solares vendidos a distintas personas, habiendo

quedado reducida su cabida a doscientos cuarenta metros cuadrados." El registrador consideró que la diferencia entre la cabida del título presentado a inscripción—compraventa del *remanente* de la finca original—y la cabida registral, constituía un defecto subsanable y así lo hizo constar *al inscribir* el dominio a favor del adquirente. Creo que el registrador actuó acertadamente.

Las fincas constituyen la unidad básica del registro. Y las mismas se determinan (*a*) por su naturaleza; (*b*) por su situación; (*c*) por sus linderos y (*d*) por su superficie, de acuerdo con el núm. 1 del art. 9 de la Ley Hipotecaria, 2 Dorta Duque, Curso de Legislación Hipotecaria, págs. 262 y 268. La medida superficial, pues, es uno de los elementos para la determinación de un inmueble. Y la Dirección General de los Registros en resolución de 21 de mayo de 1913, según aparece citada en Medina y Marañón, Leyes Civiles de España en la nota 3 de la porción relativa a la Ley Hipotecaria, pág. 10, ha resuelto que "no se determina la finca diciéndose en la escritura de cesión que se había segregado de la misma cierta extensión *sin consignar el número de metros.*" En igual sentido se pronuncia Morell y Terry en sus Comentarios a la Legislación Hipotecaria, tomo 2, pág. 108, al decir ". . . cuando se asigne a la finca en el título menor extensión que en el registro por errores anteriores de medición, no hay dificultad alguna en inscribir una vez apreciada su identidad, *y si la diferencia proviene de haberse segregado o separado antes parte de la cabida, debe hacerse constar así en el título y en el registro, expresando la extensión de la porción segregada.*" La omisión de alguna de las circunstancias comprendidas en alguno de los números del art. 9 de la Ley Hipotecaria constituye un defecto subsanable. *Rosado* v. *Registrador*, 68 D.P.R. 594. Igual ocurre en caso de inexactitud, si ésta no es substancial. Art. 32, en relación con el 30 y el 9 de la Ley.

Refiriéndose a la extensión superficial de las fincas a los fines de su determinación, así se expresa Morell en la obra y tomo citados, pág. 104:

"Cada finca representa una fracción, una cantidad parcial dentro de la total que integra la propiedad inmueble de un país. Esa cantidad se halla indicada por la extensión superficial. La naturaleza, la situación, los linderos, y otras especiales circunstancias, darán a conocer el sitio o punto del espacio en que se halle, su figura y su contorno; pero en suma, nada que por sí sólo baste para su determinación. Con la misma forma y linderos, y en el mismo sitio, la finca puede tener una hectárea y puede tener ciento. Donde no consta la extensión, falta una circunstancia esencialísima."

Y a la pág. 107:

"En todo caso, el Registrador debe calificar las diferencias de cabida entre el Registro y los documentos siempre que afecte a la identidad de la finca o a la extensión del derecho, como afirma la Resolución de 18 de Octubre de 1911. Además, en el caso primero, si la diferencia consta que obedece a errores anteriores en la medición, y es de poca importancia, no hay dificultad en inscribir haciendo constar en el asiento la alteración, y con mayor razón si la cabida se expresaba sólo de un modo aproximado, según reconocen las Resoluciones de 9 de noviembre de 1877, 8 de julio de 1878 y 8 de marzo de 1898, y en cuanto al caso de expresarse aproximadamente la cabida, la de 21 de mayo de 1881. Si la diferencia es de importancia no puede verificarse la inscripción mientras no se justifique la adquisición de lo que falta, como expresan las Resoluciones de 14 de marzo de 1876, 7 de septiembre de 1880, 22 de noviembre de 1893, 27 de octubre de 1894 y 20 de marzo de 1901."

El caso de *Ruiz* v. *Torres*, 61 D.P.R. 1, fué resuelto correctamente. Al igual que en aquél, en el caso de autos no se trata de una *nueva segregación* y sí de la venta del remanente de la finca que originalmente constaba de 2360 m. c., cuya cabida, según el Registro, había quedado reducida a 543 m. c. La cabida del remanente que se describe en la escritura de venta objeto de este recurso no corresponde con la cabida registral a que quedó reducida la finca original por virtud de las segregaciones anotadas marginalmente.

No puede tratarse el problema jurídico que nos ocupa aplicando a él los principios, correctamente expuestos en la

opinión del Tribunal, que rigen para los casos de segregaciones, que es lo que en dicha opinión, en efecto, se hace. Al no consignar en la escritura de venta el número de metros segregados de la finca principal—y no coincidiendo la cabida superficial del Registro con la cabida indicada en la escritura—la inscripción sobre la totalidad del remanente fué propiamente hecha al calificar el Registrador dicho documento como uno que adolecía del defecto *subsanable* de no contener constancia de la totalidad de las segregaciones hechas anteriormente, en número de metros.

A mi juicio, la nota recurrida debería confirmarse.