La Junta de Retiro para Maestros de Puerto Rico, recurrente, *v.* El Registrador de la Propiedad de Caguas, Sección I, recurrido.

*Número:* O-79-581    *Resuelto:* 14 de abril de 1980

*Carlos D. Vázquez Martínez,* abogado de la recurrente; el Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

En garantía de préstamo por $33,600.00 de principal e intereses al 9 3/4% anual, pagaderos en 332 plazos mensuales de $292.95 cada uno, los cónyuges Félix Arroyo Rodríguez y Milagros Ortiz Rivera constituyeron hipoteca a favor de la recurrente Junta de Retiro para Maestros en la escritura Núm. 126 otorgada en San Juan el 13 agosto, 1979 ante el notario Lic. Carlos D. Vázquez Martínez. La previa tasación o avalúo que ordena el Art. 127 de la Ley Hipotecaria se insertó como cláusula duodécima de la escritura, y dice:

"—Duodécima: Las partes, de común acuerdo, tasan la finca hipotecada en la cantidad que resulte adeudarse conforme a sentencia firme, para que dicha cantidad sirva de tipo mínimo en la primera subasta que se celebre, en caso de que vencida por cualquier causa la obligación que se garantiza, la Acreedora proceda a la ejecución de la hipoteca constituida a su favor."

Presentada la escritura en el Registro de la Propiedad, Sec. Primera de Caguas, la inscribió el Registrador *"con el*

*Defecto Subsanable* de no señalarse cantidad alguna como tasación de la finca para el caso en que sea subastada en cualquier clase de procedimiento ejecutivo de acuerdo al artículo 127 de la vigente Ley Hipotecaria y a lo resuelto por el Tribunal Supremo en el caso de Ponce Federal versus Gómez, resuelto el 28 de marzo de 1979. La expresión que aparece en la cláusula duodécima de la escritura no cumple con el precepto legal establecido pues identifica el valor de la finca con el monto del crédito garantizado al momento de la subasta. Caguas, a 14 de noviembre de 1979". (Énfasis en el original.) Es contra dicha calificación de defecto subsanable que recurre la Junta acreedora.

En *Ponce Federal Savings* v. *Gómez*, 108 D.P.R. 585 (1979), insuflamos contenido ético a la ejecución de hipoteca por la vía ordinaria, el método usualmente preferido por los acreedores, al sujetarlo a la exigencia del Art. 127 de la Ley Hipotecaria, 30 L.P.R.A. sec. 223 ([1]) de previo avalúo o tasación que sirva de tipo en la primera subasta. Nos propusimos con ello cerrar la puerta a la grave injusticia que representa la adquisición por el acreedor de la finca hipotecada mediante oferta en subasta de parte del crédito adeudado, adjudicándose el inmueble por precio irrisorio y libre para perseguir otros bienes de su deudor por el balance impagado de su crédito.

Esta protección al deudor no disminuye la calidad de

---

([1]) Sec. 223. *Valor de la finca deberá hacerse constar en la escritura de hipoteca; tipo de valoración para las subastas*

"En la escritura de hipoteca se hará constar el precio en que tasan la finca los contratantes para que sirva de tipo a la primera subasta que se debe celebrar, en el caso de que, vencido el plazo del préstamo, no conste en el registro de la propiedad el pago de dicho préstamo.

"Si no produjere remate ni adjudicación la primera subasta, en la segunda que se celebrare servirán de tipo las dos terceras partes del precio en que hayan tasado la finca los contratantes, pero cuando esas dos terceras partes no excedieren de la cuantía de las responsabilidades preferentes, esa cuantía señalará el mínimo de las posturas admisibles.

"Si tampoco hubiere remate ni adjudicación en la segunda subasta, regirá como tipo en las otras subastas que pudieran celebrarse el valor total a que ascienden los créditos preferentes."

garantía máxima de la obligación dineraria que provee la hipoteca, ni afecta la flexibilidad para confrontar situaciones variantes en la subasta originadas en la constitución o cancelación de otros gravámenes sobre el inmueble. *Cf. Fernández Rivera* v. *Tribunal Superior*, 93 D.P.R. 629, 639–40 (1966).

La pretensión de la recurrente de ajustar el tipo mínimo en subasta al que fuere el importe de la sentencia obtenida al momento de la subasta es recurso vicioso y perjudicial para el deudor, y opera en detrimento de la norma justa adoptada en *Ponce Federal Savings* v. *Gómez*, supra. Conduce en la práctica a agravar la situación del deudor y el riesgo de perder su propiedad en la ejecución, pues mientras más se esfuerce en pagar la deuda reduciendo el balance de la hipoteca, reducirá también el tipo mínimo en subasta y aumentará la posibilidad de que todo su honrado esfuerzo conduzca a la pérdida de su patrimonio en una oferta irrisoria.

▬▬▬ Aparte de esta situación que el Registrador recurrido rechaza como absurda, porque "mientras más paga el deudor más baja el precio de la finca", la citada cláusula duodécima de la escritura de constitución de hipoteca en su provisión de que "las partes, de común acuerdo, tasan la finca hipotecada en la cantidad que resulte adeudarse conforme a sentencia firme" (2) no satisface el principio de especialidad y certeza que gobierna el Derecho inmobiliario. Toda vez que la hipoteca es derecho real que sujeta lo hipotecado cualquiera

---

(2) Señalando perjuicio para el deudor en cláusula menos onerosa en que se fija a la finca como valor sólo el importe de su responsabilidad, estimando que en su día se venderá por lo que realmente valga, explica Morell: "Teóricamente el argumento tiene fuerza; prácticamente no tiene ninguna. La finca vale 20: su responsabilidad es de seis, y seis es el tipo primero para la subasta, tipo que aun puede bajar a la mitad, y del que se aprovechan los licitadores valiéndose de diferentes medios, casi siempre sin recursos en el deudor o propietario para evitar su perjuicio. Esto es lo real, y a veces no se necesitan primas ni artimañas ni confabulaciones: sólo hay un postor que conoce bien la finca y se aprovecha de la tasación, o no existe ninguno, por consideraciones mal entendidas hacia el deudor, y entonces es el acreedor quien recibe el beneficio." *Legislación Hipotecaria*, ed. 1930, T. 4, pág. 96.

que sea su titular, al poder de exigir eventualmente la realización de su valor, todo en seguridad o garantía de la efectividad de alguna obligación dineraria; (³) y produce un señorío jurídico sobre la cosa cuya esencia es la realización del valor en cambio del bien hipotecado, la certeza de los elementos que viabilicen su ejecución es parte principalísima de la escritura de constitución del crédito. Carece de certeza esta cláusula duodécima que remite el tipo mínimo en subasta al imponderable en la esfera registral de cuál sea en determinado momento el balance deudor, introduciendo en la crítica etapa de ejecución un trámite de liquidación de cargas y abriendo paso a una serie inacabable de incidentes. El conocimiento del justiprecio pactado para el caso de ejecución es factor vital al que necesariamente han de referirse tanto el hipotecante como acreedores y poseedores posteriores concernidos con la administración económica del inmueble. Estas son las razones que inducen un previo avalúo, que si bien lo establecen libremente los interesados, han de hacerlo de modo *claro y preciso* (⁴) que garantice la efectividad de la hipoteca.

Este requisito de claridad y precisión, no reduce sino que fomenta el libre arbitrio de las partes que al fijar el tipo para subasta en la escritura pueden elegir el valor que ellas estimen que les conviene que tenga el inmueble en el momento en que la subasta se abre (Morrell y Terry, *op. cit.*, pág. 95); o cómo dictamina Roca Sastre "Los interesados pueden adoptar como tipo de subasta la cifra que mejor les parezca, sin que deban ajustarse al valor real de la finca, pues más que tasar bienes pactan un tipo de licitación. No podrá impugnarse este tipo convencional de subasta, a base de demostrar que es inexacto, pues la ley sólo quiere que la escritura de constitución contenga por acuerdo de los interesados un tipo que haya de servir para la futura o posible subasta. La sentencia de 14 de enero de 1924 atribuye el

---

(³) Roca Sastre, *Derecho Hipotecario*, sexta ed., 1968, T. IV, Vol. 1, pág. 121.

(⁴) Roca Sastre, *op cit.*, T. IV, Vol. 2, pág. 1033.

carácter de simple requisito a la determinación de un tipo de subasta, sin que puedan influir en él otras valoraciones, incluso la que resulte del Catastro." Roca Sastre, *ibid.*, T. IV, Vol. 2, pág. 1033. Esta libertad de los contratantes en el previo avalúo está necesariamente moderada por un sentido de realidad y trato justo que impide los abusos a que nos hemos referido.

■ La apuntada deficiencia en la escritura objeto de este recurso ha debido calificarse como insubsanable y suspenderse la inscripción. Así lo reconoce el propio Registrador quien cierra su alegato solicitando que se corrija su error de calificación y que se declare la hipoteca no inscribible. Su rara petición obliga a un examen del procedimiento que rige este recurso.

Ordena el Art. 5 de la Ley de 1ro marzo, 1902 sobre recursos gubernativos contra decisiones de los Registradores de la Propiedad, 30 L.P.R.A. sec. 1775:

"Contra la calificación de defectos subsanables que hicieren los registradores podrá acudir el interesado al Tribunal Supremo para resolución definitiva. El Tribunal Supremo confirmará o revocará la resolución del registrador y éste hará lo que procediere de conformidad con dicha decisión."

■ En vista de la dificultad en la calificación de un defecto como subsanable o insubsanable y que navegando en la zona gris que separa uno del otro, en el pasado títulos defectuosos ganaron inmerecido acceso al Registro, este Tribunal ha venido promoviendo la aceptación para inscripción de únicamente títulos perfectos. [5] *Royal Bank of Canada* v. *Registrador*, 104 D.P.R. 400 (1975). El procedimiento dispuesto para recursos gubernativos provee en el Art. 2 de la citada ley, 30 L.P.R.A. sec. 1772, para que el propio Registrador en determinados casos, que percibimos de mayor excepción por su básica naturaleza consultiva, remita el documento

---

[5] Los Arts. 67 y 68 de la Ley Hipotecaria y del Registro de la Propiedad (Ley Núm. 198 de 8 de agosto de 1979) terminarán con esta clasificación de defectos ciñendo la calificación del Registrador a inscribir o denegar la inscripción.

a este Tribunal para que revise su calificación. (⁶) Estas disposiciones de ley, habiendo asumido jurisdicción para conocer del recurso, nos facultan para corregir el error de calificación que estimó falta subsanable la que es insubsanable y la correlativa actuación del Registrador admitiendo para inscripción esta escritura de hipoteca.

*Se dictará sentencia revocando la nota del Registrador y ordenando a éste que deniegue la inscripción, si no se irrogare perjuicio a tercero.*

El Juez Asociado Señor Martín emitió opinión disidente a la que se une el Juez Asociado Señor Torres Rigual. El Juez Asociado Señor Negrón García emitió opinión disidente separada.

—O—

Opinión disidente emitida por el Juez Asociado Señor Martín a la cual se une el Juez Asociado Señor Torres Rigual.

San Juan, Puerto Rico, a 14 de abril de 1980

Se plantea en este caso si en un recurso gubernativo este Tribunal debe ordenar la cancelación de una inscripción con defecto subsanable al advertir que el defecto consignado es de naturaleza insubsanable.

El Tribunal ha dicho hoy que podemos hacerlo. Mi opinión es que existen impedimentos en ley para hacerlo. El recurso gubernativo ciertamente no es el método adecuado para ello, ya que la ley ofrece el remedio para la cancelación de la inscripción por el interesado o para la rectificación de los

---

(⁶) Esta iniciativa del Registrador ha sido preservada en el párr. 6to del Art. 77 de la Ley Hipotecaria de 1979, con el siguiente texto:

"El Registrador, en caso de haber denegado la inscripción de un documento, podrá, luego de transcurridos 10 días de notificada la denegatoria sin que se haya recogido el documento y antes de vencer el término que tiene el interesado en la inscripción para recurrir, someter al Tribunal Supremo el documento rechazado conjuntamente con el escrito de recalificación y un alegato en apoyo de su acción, de todo lo cual notificará al interesado. El interesado tendrá 10 días a partir de la notificación del recurso para presentar su alegato. En este caso serán de aplicación todas las disposiciones de esta ley respecto a recursos gubernativos y sus efectos."

errores que pueda haber cometido el Registrador al efectuar el asiento, cualquiera que sea el caso.

El caso presenta un aspecto interesante y peculiar de nuestro régimen hipotecario vigente, el que sabemos ya está presto a concluir. La cuestión que se plantea requiere que consideremos la naturaleza y mecanismo de operación de las disposiciones pertinentes de nuestro ordenamiento registral; y al hacerlo, es prudente considerar una vez más el historial de nuestra legislación, los detalles que la asemejan o distinguen de otras legislaciones donde se ha suscitado igual controversia y, desde luego, el nutrido acervo de directrices que fundadamente han formulado durante el tiempo la doctrina científica y la jurisprudencia. Veamos.

## I

No en todas las ocasiones los títulos que se presentan ante el Registro de la propiedad son títulos perfectos. Como consecuencia de circunstancias innumerables dichos títulos adolecen muchas veces de defectos que de una manera u otra restan a dicho título utilidad y valor. Ante ellas se enfrenta el Registrador y la naturaleza o extensión del vicio que los deslustra será determinante en la calificación que éste haga de los mismos poniendo en vigor el principio de legalidad que es, sin duda, elemento fundamentalísimo en el orden registral. Véase Barrachina y Pastor, *Derecho Hipotecario y Notarial*, 1910, T. II, pág. 219 *et seq.*

Desde mucho tiempo atrás las legislaciones han clasificado estos defectos que suelen contener algunos títulos; la nuestra, como la española de la que procede, los divide en dos categorías, cuales son, defectos subsanables y defectos insubsanables. Nuestro estatuto dispone que "serán faltas subsanables las que afecten a la validez del título, sin producir necesariamente la nulidad de la obligación en él constituida", y serán faltas no subsanables "las que produzcan necesariamente la nulidad de la obligación". Ley Hipotecaria de 1893, Art. 65, según enmendado, 30 L.P.R.A. sec. 114; Reglamento

Hipotecario de 1893 (Art. 110, 30 L.P.R.A. sec. 990). Véanse *Royal Bank of Canada* v. *Registrador,* 104 D.P.R. 400 (1975); *Leduc* v. *Registrador,* 77 D.P.R. 709 (1954); *Sucesión Santos Collazo* v. *Registrador,* 41 D.P.R. 576 (1930); *Blanco* v. *El Registrador,* 5 D.P.R. 26 (1903).

La medida que los señores registradores habrán de proveer ante defectos de una u otra índole es disímil. Si la falta es de carácter insubsanable, el registrador debe denegar la inscripción; mas si la falta es subsanable la situación es distinta. La ley dispone que "los registradores no suspenderán por defectos subsanables la inscripción, anotación o cancelación de ningún título"—Art. 65 (30 L.P.R.A. sec. 114)—si que, en cambio, "en la inscripción harán constar los defectos que contenga el título y en cualquier tiempo en que se presente la documentación para subsanarlo, se hará constar la subsanación por nota marginal". *Id.*

Ahora bien, dado que la calificación que de los títulos presentados hace el registrador no es infalible, y considerando que el juicio que los mismos emiten, denegando, suspendiendo o cualificando una inscripción, puede originar perjuicios a los interesados, el legislador estableció el recurso gubernativo contra la calificación. Ello, naturalmente, sin perjuicio de la posibilidad de ejercitar la acción correspondiente acerca de la existencia y validez del derecho de que se trate en el juicio plenario correspondiente.

Tal recurso gubernativo se establece por el Art. 66 de la Ley Hipotecaria, al determinar que "los interesados podrán reclamar gubernativamente contra la calificación del título hecha por el registrador, sin perjuicio de acudir, si quieren, a los Tribunales de Justicia para ventilar y contender entre sí acerca de la validez o nulidad de los documentos de la obligación".[1] 30 L.P.R.A. sec. 115. Vázquez Bote, *Elementos*

---

[1] La Ley Hipotecaria provee además un mecanismo adecuado para que el Registrador pueda rectificar los errores que haya cometido al efectuar un asiento. Arts. 254–264 (30 L.P.R.A. secs. 431–441); Reglamento Hipotecario, Arts. 290–302, 30 L.P.R.A. secs. 1281–1293. Véase, además, el procedimiento provisto por la nueva Ley Hipotecaria y del Registro de la Propiedad, Ley Núm. 98 de 8 de agosto de 1979, Arts. 150–154.

*de Derecho Hipotecario Puertorriqueño*, Barcelona, 1973, pág. 332. Hernández Gil, *Introducción al Derecho Hipotecario*, Madrid, 1963, Vol. III, pág. 152 *et seq.*

El alcance o extensión que debe distinguir a la impugnación que por la vía gubernativa se hace contra la calificación, ha sido expuesto con claridad por la doctrina atendiendo al rigor de la ley y a la naturaleza jurídica del recurso que deviene como procedimiento de jurisdicción voluntaria donde no hay oposición de parte interesada. *Chase Manhattan Bank* v. *Registrador*, 98 D.P.R. 92, 97 (1969). Véanse *Sucesión Criado* v. *Martínez et al.*, 25 D.P.R. 334, 339–340 (1917); *Martorell et al.* v. *J. Ochoa & Hno. et al.*, 23 D.P.R. 31, 42 (1915); *Roig* v. *El Registrador de la Propiedad*, 18 D.P.R. 11, 15 (1912). Al efecto, Galindo y Escosura son eminentes al apuntar con manifiesta claridad que al resolverse el recurso gubernativo "la resolución ha de recaer sobre los defectos consignados en la nota que hayan sido motivo de la apelación, sin que sea lícito resolver respecto de defectos que el Registrador no hubiese expresado en la nota, y sí alegado al tramitarse el recurso". *Comentarios a la Legislación Hipotecaria*, Madrid, 1903, T. II, pág. 626. No puede ser de otra manera puesto que "el recurso se interpone contra la calificación" por lo que "la Resolución no puede recaer sobre lo que no ha sido objeto del recurso". Galindo y Escosura, *op. cit.*, pág. 644. *Baldrich* v. *Registrador*, 77 D.P.R. 739, 743 (1954); *Rivera* v. *Registrador*, 55 D.P.R. 104, 106 (1939); *Graciani* v. *El Registrador*, 25 D.P.R. 44, 48 (1917).

Puede suceder, sin embargo, que consignada en la nota cierta circunstancia como defecto *subsanable*, e interpuesto recurso gubernativo a tenor con las normas de rigor, el organismo encargado de entender en el mismo—en Puerto Rico, el Tribunal Supremo; en España, el Presidente de la Audiencia del territorio o en su caso el Directorio General de los Registros y del Notariado—entiendan según su mejor criterio que el Registrador incidió al calificar por cuanto el defecto es de tal envergadura que debió tenerse como *insub-*

*sanable.* Ante esta eventualidad los organismos gubernativos españoles y nosotros hemos adoptado distintas providencias. Veamos a qué se debe esa diferencia para colocarnos en posición de determinar si a la luz del derecho registral vigente en nuestro país, la norma que hemos adoptado en el pasado debe ser revisada.

## II

En España, el tratamiento registral que siempre se le ha concedido a un título que adolece de falta subsanable es similar al que una vez le otorgara nuestra legislación, antes de que nuestro ordenamiento hipotecario recibiera a principios de siglo los embates de fuerzas que no comprendieron bien su esencia y orden.

El Art. 65 de la Ley Hipotecaria española, dispone en su parte pertinente:

"Las faltas de los títulos sujetos a inscripción pueden ser subsanables o insubsanables.

Si el título tuviere alguna falta subsanable, el Registrador suspenderá la inscripción y extenderá anotación preventiva cuando la solicite el que presentó el título.

En el caso de contener alguna falta insubsanable se denegará la inscripción, sin poder hacerse anotación preventiva."

De suerte que en España un título en el que el Registrador advierte un defecto subsanable *no puede producir una inscripción* y sólo amerita una anotación preventiva que por regla general caducará a los sesenta días de su fecha. Art. 96 de la Ley; véase el Art. 204 del Reglamento. Este principio registral que impide que un título defectuoso conlleve una inscripción ha permanecido siempre en la legislación española.

Ante tales disposiciones estatutarias ya el Reglamento Hipotecario español de 1915 en su Art. 126 sistematizó y mejoró la doctrina contenida en los 131 y 82 del anterior, distinguiendo los supuestos a suscitarse al recaer resolución en recurso interpuesto por la vía gubernativa, al disponer:

"Si la resolución declarase insubsanable el defecto, el Registra-

dor cancelará de oficio las anotaciones o notas marginales preventivas extendidas, y hará constar por nota al margen del asiento de presentación la resolución recaída."

Con respecto a dicho Art. 126 el ilustre hipotecarista español, don Ramón de la Rica y Arenal, comentaba:

"La regla es clara: queda cerrado el acceso del documento al Registro, por adolecer de falta insubsanable, y sólo queda por hacer la cancelación del asiento que produjo y de sus notas marginales. Dice el Reglamento que también se cancelen las anotaciones preventivas; *pero esto sólo podrá ocurrir si la nota recurrida hubiese calificado el defecto de subsanable y se hubieren tomado aquéllas, y luego la resolución firme agrave la calificación y lo declare insubsanable: puesto que si el Registrador lo hubiere calificado así en su nota, no habría podido tomar dicha anotación.*" (Énfasis nuestro.) *Comentarios al nuevo Reglamento hipotecario*, Madrid, 1949, 2da parte, pág. 187.

Véanse Casero Fernández, *Leyes Hipotecarias y Legislación Complementaria*, Madrid, 1969, pág. 599. Roca Sastre, *Derecho Hipotecario*, 6ta ed., Barcelona, 1968, T. II, págs. 304-305.

Como vemos, la solución que se alcanza en la opinión del Tribunal coincide con el criterio que sustenta don Ramón de la Rica y Arenal, basado en el Art. 126 del Reglamento Hipotecario español, sin paralelo en el nuestro; esto es, que calificado un defecto como subsanable puede en recurso gubernativo agravarse la calificación por considerar *insubsanable* dicho defecto. Nuestro ordenamiento vigente no tolera tal interpretación. Veamos.

### III

El Art. 65 de la Ley Hipotecaria para las provincias de ultramar que regía en Puerto Rico disponía que en casos en que el título presentado al registro comprendiera falta subsanable, "el Registrador suspenderá la inscripción, y extenderá anotación preventiva, si la solicita el que presentó el título". Véase edición oficial, Madrid, 1893, pág. 49. De manera que en sus orígenes nuestra legislación registral

marchaba a la par con la legislación española de donde fue tomada, propulsando decididamente la entrada al registro de títulos perfectos exclusivamente. Esa perspectiva fue, no obstante, radicalmente alterada.

Mediante Orden General Núm. 99 que emitiera el Gobierno Militar de ocupación del 30 de abril de 1900, (²) se autorizó por primera vez la inscripción de títulos con defectos subsanables. Prontamente, la medida impuesta por las autoridades militares norteamericanas recibió la anuencia del gobierno civil que la confirmó mediante Ley del 1ro de marzo de 1902. Muñoz Morales, *Texto Revisado de la Ley Hipotecaria de Puerto Rico y su Reglamento*, Cataño, 1942, págs. 2–4. Por virtud de las nuevas disposiciones cuyo rigor aún subsiste, según hemos reseñado, ya hoy no se suspende la inscripción por defecto subsanable en el título, (³) sino que se inscribe haciendo constar ese defecto en la inscripción que puede luego subsanarse en cualquier tiempo. Por lo tanto, una propiedad cuyo titular ha inscrito su derecho, aunque con defecto subsanable, entra en el mercado territorial gozando de las protecciones registrales y sus posteriores adquirentes pueden inscribir sus derechos y acogerse también a las garantías registrales. Más aún, en casos en que la inscripción es constitutiva, como el de la hipoteca, el derecho real se constituye *cuando se inscribe* aunque se inscriba *con defecto subsanable* y en lo sucesivo el derecho hipotecario puede ser transmitido y descontado en el mercado financiero pues ya ha surgido como tal. Desde luego, que la vía judicial siempre queda abierta para la impugnación de los asientos. Ley Hipotecaria, Art. 79(3), (30 L.P.R.A. sec. 153(3)); *De la Torre v. Registrador*, 57 D.P.R. 681 (1940).

Esta situación no es, sin duda, la más saludable desde la perspectiva de la mejor aspiración del derecho registral. (⁴)

___

(²) Dictada por el Brigadier General Davis.

(³) Véase, sin embargo, el Art. 69 de la nueva Ley Hipotecaria que no permite la inscripción de títulos con defectos.

(⁴) Morell y Terry nos apuntó hace más de medio siglo: "Si se nos pregunta si esa solución será o no más conveniente para el crédito territorial, diremos que no

Conduce a que los defectos subsanables continúen indefinidamente vigentes en el Registro y que se vayan transmitiendo a las inscripciones posteriores. Con ánimo de corregir el problema, la Asamblea Legislativa, mediante la Ley Núm. 65 de 9 de mayo de 1936, dispuso que la inscripción con defecto subsanable impediría la extensión de otro asiento posterior de transmisión o gravamen sobre la misma finca o derecho mientras no fuera subsanado aquel defecto. Apenas se había secado la tinta con que se imprimió aquella Ley, a los sesenta días de su fecha fue derogada por otra—Ley Núm. 20 de 9 de julio del mismo año—que revertía al estado anterior y promulgaba nuevamente que el defecto subsanable podía corregirse en "cualquier tiempo", sin limitación alguna, pudiendo por tanto transmitirse o gravarse libremente el derecho inscrito, trasladándose indefinidamente, como ya apuntamos, a las subsiguientes inscripciones el defecto señalado. Aún rige esa ley. Muñoz Morales, *Lecciones de Derecho Hipotecario*, Río Piedras, 1945, T. I, págs. 107–112. Es, pues, de reiterado apoyo legislativo el principio vigente en nuestro ordenamiento registral que se inclina a favor de la transmisibilidad de derechos inscritos con defecto subsanable.

Nos preguntamos entonces, ¿qué efecto tendría en nuestro sistema, si a través de la vía gubernativa pudiera ampliarse la nota del Registrador, a los fines de agravarla, para considerar insubsanable el defecto que se halló corregible?

## IV

Conviene señalar, en primer término, que nuestro ordenamiento no cuenta con un artículo similar al ya mencionado

creemos que le favorezca, porque al fin viene a ser secuela o consecuencia de un sistema por nosotros combatido. Creemos que la inscripción debe ser la que represente el nacimiento ante todos y para todos del derecho real, y que el Registro sólo debe admitir o dar vida a derechos perfectos. Cuanto más inatacable resulte el derecho inscrito, mayor será su firmeza, mayores sus ventajas, y más seguridad debe prestar al crédito territorial." *Comentarios a la Legislación Hipotecaria*, Madrid, 1917, T. III, pág. 298.

126 del Reglamento Hipotecario español, que contempla la agravación de defectos según expresa de la Rica y Arenal. *Comentarios al Nuevo Reglamento Hipotecario,* supra. Pero al margen de esa deficiencia en ley (5) la solución que ofrece la opinión del Tribunal es incompatible con el sistema que permite la *inscripción* con defecto subsanable.

En nuestro ordenamiento, repetimos, el derecho inscrito con defecto subsanable adviene como tal de ser constitutivo, y es transferible en todos los casos. La interposición de un recurso gubernativo no afecta esa negociabilidad del derecho, pudiendo suceder que al recaer resolución ya medien varias transacciones sobre el mismo y hayan surgido titulares que adquirieron partiendo de la constancia registral de defecto subsanable así como de la pendencia de un recurso gubernativo dirigido precisamente a la eliminación de esa constancia de defecto con el subsiguiente perfeccionamiento de la inscripción. Mediando una inscripción, los adquirentes posteriores no consideran que por la vía gubernativa no contenciosa se pueda anular un asiento que rompa el tracto de su derecho.

En el caso de derechos constitutivos como es la hipoteca el problema se torna más grave. Al *inscribirse éstos, aun con defecto subsanable,* advienen como tal y pueden entrar al mercado de los títulos reales. No obstante, si el recurso gubernativo ordena la cancelación de la inscripción, la hipoteca que había nacido desaparece. Si tal hipoteca garantizaba un pagaré, dicho pagaré perderá su garantía real. En este sentido, resolver este caso con el *caveat* de que la cancelación sólo se verificará si no se causa daño a tercero no es solución al problema.

Establecida la norma que impone la opinión del Tribunal, se convierte en regla de nuestro orden hipotecario que en los

---

(5) El Tribunal invoca en su apoyo el Art. 77, párr. 6to de la nueva Ley Hipotecaria. No me parece correcto. La interposición de un recurso gubernativo bajo las disposiciones del Art. 5 de la Ley de 1ro de marzo de 1902 como bajo el Art. 77 de la Ley de 1979 no da facultad a este Tribunal para calificar *de novo* un título ni para tomar providencia alguna que no podamos tomar en un recurso interpuesto a instancia de un interesado.

recursos gubernativos interpuestos contra inscripciones con defectos subsanables este Tribunal puede agravar la nota y ordenar la cancelación del derecho inscrito. En lo subsiguiente y antes de que comience a regir la nueva ley hipotecaria todo el que trafique con un derecho inscrito con defecto subsanable contra el cual se ha interpuesto recurso gubernativo, se expone a las resultas inciertas y potencialmente perjudiciales del recurso gubernativo del cual no es parte. Esto crea un estado de incertidumbre plena suscitándose un dilema perjudicial al tráfico territorial. O se consiente a la nota de inscripción con defecto—que será la alternativa sin duda preferida—o se suspende, al interponerse el recurso, la negociabilidad del derecho defectuosamente inscrito, solución que es contraria al deseo legislativo que se manifestó con claridad al derogarse la fugaz Ley Núm. 65 del 9 de mayo de 1936, según queda explicado antes en esta opinión. A nuestro sistema registral, ya aquejado de contradicciones no debería imponérsele en el ocaso de su existencia, un mecanismo tan contradictorio como el que se le impone hoy.

En *Behn* v. *El Registrador de San Juan*, 26 D.P.R. 166 (1918), nos enfrentamos a un caso muy similar al de autos. Se trataba allí de una escritura de compraventa donde uno de los comparecientes "vendió" al otro sus participaciones en determinados inmuebles sin que existiera precio alguno a devolver y consistiendo la contraprestación del "adquirente" en una serie de convenios que en nada representaban un precio. Sin embargo, el Registrador de la Propiedad procedió a inscribir haciendo constar el defecto subsanable de no estar claramente determinado el precio fijado para la venta. Interpuesto recurso gubernativo resolvimos por voz del extinto Juez Presidente, don José C. Hernández:

"El documento de 24 de agosto de 1917 ha sido calificado de válido por el registrador, pues de estimar que adoleciera de alguna falta que produjera necesariamente la nulidad de la obligación hubiera denegado la inscripción cumpliendo el deber que le impone el artículo 65 de la Ley Hipotecaria. No podemos hoy discutir la

validez del documento por ser materia ajena al presente recurso, cuyo estudio debe limitarse a considerar y resolver si verificada como ha sido la inscripción procede la anotación de los dos defectos anotados por el registrador.

En la escritura se hace constar por modo claro que no existe precio alguno de venta a devolver y que el único recibido por el vendedor del comprador como causa o consideración del contrato consiste en los convenios estipulados en la escritura. Habiendo estimado el registrador, no obstante las anteriores manifestaciones y el texto del artículo 1348 del Código Civil, según el cual en el contrato de compraventa uno de los contratantes se obliga a entregar una cosa determinada y el otro a dar por ella un precio cierto en dinero o signo que lo represente, que las partes habían celebrado un contrato de compraventa, estaba impedido de exigir que se consignara un precio distinto del que él entendió que las partes habían fijado como tal. Dada la calificación del contrato hecha por el registrador, no existe el primer defecto subsanable apuntado."

Como puede advertirse nos negamos entonces a pasar juicio "de novo" sobre la muy dudosa corrección de la inscripción con defecto subsanable, y nos limitamos a determinar si, partiendo de la inscripción, procedía que se hiciera constar en ésta defecto subsanable alguno. Esa norma es correcta porque, con independencia de sus méritos últimos, se ajusta a nuestro sistema, y por tanto, debe ser sostenida.

La Dirección General de los Registros y del Notariado tuvo ante sí una situación muy ilustradora respecto a la de autos y que bien puede suscitarse ante nos aun bajo la Ley Hipotecaria recientemente aprobada. Presentada al Registro una escritura de venta y agrupación de fincas surgiendo en la nueva finca una cabida que excedía la suma de las anteriores, el Registrador inscribió la agrupación y venta, pero no el exceso de cabida, por tener duda acerca de la identidad de la nueva finca, fundada en la falta de coincidencia entre sus linderos y los de las fincas agrupadas.

Interpuesto recurso por el Notario autorizante del referido título y declarado por el Presidente de la Audiencia Territorial correspondiente no inscribible ninguna de las partes del

mismo por no estar extendido conforme a las leyes, la Dirección General, revocando el auto apelado, determinó que había cometido error el Presidente de la Audiencia al declarar que no era inscribible una escritura que ya estaba *inscrita mediante asiento que se hallaba bajo la salvaguardia de los tribunales de justicia debiendo haber contraído su resolución a lo referente al exceso de cabida.* Resolución de 22 de junio de 1951; Roca Sastre y Molina Juyol, *Jurisprudencia Registral,* Barcelona, 1967, T. IX, pág. 49; 24 *Revista Crítica de Derecho Inmobiliario,* 1951, págs. 855–856. Véanse, además, las resoluciones de 2 de marzo de 1962, 14 de noviembre de 1959, 29 de abril de 1959, 4 de diciembre de 1951 y 16 de junio de 1948.

En casos como el de autos cualquiera que se crea perjudicado por la inscripción siempre tiene disponible, con atención de los interesados, el recurso judicial para litigar con el titular del derecho registral en torno a la validez y extensión del derecho que éste ostenta en su contra, así como cuán bien recoge el registro esa extensión y validez. Asimismo, conviene señalar en torno a los hechos del caso de autos que no por estar inscrita es ejecutable una hipoteca que violenta consideraciones de orden público. Ley Hipotecaria, Art. 33 (30 L.P.R.A. sec. 58); *Ponce Federal Savings* v. *Gómez,* 108 D.P.R. 585 (1979). No obstante, debe tenerse en mente la particular naturaleza del recurso gubernativo que dista mucho de ser un auto de apelación de los que, como en el *common law,* nos permiten abordar cualquier aspecto de la controversia que se suscita. [6] En cambio, conscientes de la naturaleza del recurso gubernativo debemos ceñirnos a la calificación que el registrador ha hecho, reconociendo que la legislación vigente nos impide agravar la calidad de las faltas consignadas para cancelar una inscripción. [7] J. Morell y Terry, *Comentarios a*

---

[6] Es sólo al Registrador de la Propiedad a quien el Estado le ha conferido la potestad calificadora. González y Martínez, *Estudios de Derecho Hipotecario y Derecho Civil,* Madrid, 1948, T. I, pág. 435 *et seq.* Este Tribunal no recalifica sino que revisa la calificación.

[7] La nueva Ley Hipotecaria retorna al sistema anterior al 1900 que no permitía que un título con defecto subsanable redundara en una inscripción.

*la Legislación Hipotecaria,* Madrid, 1928, T. III, pág. 286.

Atendiendo pues a la naturaleza de nuestra vigente Ley Hipotecaria en cuanto se refiere a las consecuencias de los vicios en los títulos presentados; considerando la esencia del recurso gubernativo y la disponibilidad de un recurso judicial plenario adecuado para la litigación final en cuanto a la validez de los asientos de inscripción que obran en los libros del registro, que se hallan bajo la tutela del Tribunal, confirmaría la nota recurrida.

—O—

Opinión disidente del Juez Asociado Señor Negrón García.

San Juan, Puerto Rico, a 14 de abril de 1980

Aunque deseable por demás el resultado, no podemos suscribir la opinión del Tribunal. Se arriba a éste sacrificando dos principios fundamentales de nuestro derecho registral—que subsisten aún bajo la nueva legislación—a saber, los de perdurabilidad de los asientos e inscripciones y la integridad de las notas del Registrador en el ejercicio de su competencia calificadora. Además, la vía en que actuamos no es adecuada. Veamos.

El principio de perdurabilidad, recogido en el Art. 77 de la Ley Hipotecaria de 1893, (1) exige la subsistencia de los asientos de inscripción hasta tanto sean cancelados por decreto expreso de los tribunales, luego de un juicio plenario en que sean oídos los que puedan tener algún interés en lo expuesto en el mismo. El principio es de aplicación en variados contextos. En *Esso Standard Oil Co.* v. *Registrador,* 88 D.P.R. 306, 312 (1963), se dejó claro que:

"El estado de derecho creado por inscripciones una vez verificadas debe ser respetado [por el Registrador] hasta que sea modificado de algún modo conocido en derecho, pues de lo contrario

---

(1) "Las inscripciones no se extinguen en cuanto a tercero sino por su cancelación o por la inscripción de la transferencia del dominio o derecho real inscrito a favor de otra persona." 30 L.P.R.A. sec. 151.

constituiría 'una arrogación de la facultad privativa de las cortes.... Los asientos extendidos en el Registro han de estimarse válidos en sí y en cuanto al acto inscrito, sean cuales fueren los vicios que se observen después hasta tanto los tribunales declaren su nulidad, no pudiendo ser anulados ni discutidos por el Registrador *ni por sus superiores jerárquicos' [cita omitida].*" (Énfasis nuestro.)

En *Berlingeri* v. *Registrador*, 96 D.P.R. 706 (1968), quedó dramatizada la imposibilidad de este Tribunal de intervenir con una inscripción ya verificada, a través del recurso gubernativo, no importa lo craso del error reflejado en el asiento. En el presente caso estamos en el supuesto de nulidad de la inscripción por faltar el segundo de los requisitos expresados en el Art. 9 de la Ley de 1893 (30 L.P.R.A. sec. 34). Lo que procedería sería solicitud judicial del interesado sobre cancelación total de la inscripción en juicio plenario, ello a falta de otorgamiento de escritura pública o documento auténtico consintiendo el favorecido por el asiento. Arts. 79 y 82 de la Ley Hipotecaria, 30 L.P.R.A. secs. 153 y 156 respectivamente, según enmendados. Finalmente, en *De la Torre* v. *Registrador*, 57 D.P.R. 681 (1940), en consonancia con el referido principio de perdurabilidad, resolvimos que no importan los errores o vicios en la inscripción por haberse infringido la ley, una vez practicada y firmada por el Registrador no puede éste cancelarla por corresponder dicha función a los tribunales de justicia.

La trayectoria expuesta, de la cual hoy el Tribunal se aparta con la esperanza de que sea de "excepción", acaba con la doctrina que reconoce que una inscripción "es asiento principal, *definitivo* y de carácter positivo que se practica en los libros... y en el que se hace constar de un modo completo la constitución, transmisión, modificación de un derecho inmobiliario". Roca Sastre, *Derecho Hipotecario*, 1968, T. II, págs. 417–18. (Énfasis nuestro.) Además, tiende a afectar en gran medida la seguridad en la negociabilidad (²) de los documen-

---

(²) Bajo el sistema vigente son perfectamente negociables los títulos inscritos con defectos subsanables y ello no impide la inscripción de títulos subsiguientes en que se transfiere el dominio de un inmueble o se grave el mismo. *Bacó* v. *Registrador*, 63 D.P.R. 697 (1944).

tos de crédito si este Tribunal tuviese facultad en recurso gubernativo para ordenar la cancelación de un asiento.

Nuestras funciones en una u otra vía, han sido siempre diferenciadas. Así, se ha tenido el cuidado de señalar que una resolución recaída en recurso gubernativo no es obligatoria para los tribunales de justicia en cuanto no media la formalidad de un juicio, *Martorell et al.* v. *J. Ochoa & Hno. et al.*, 23 D.P.R. 31 (1915), y sabido es que por dicha razón no constituyen jurisprudencia a seguirse por los tribunales. *Sucn. Criado* v. *Martínez, et al.*, 25 D.P.R. 334 (1917).

Conflige de igual modo la opinión del Tribunal con la exigencia reiterada en múltiples decisiones de que el Registrador exponga *de una sola vez* en la nota los motivos y fundamentos para su actuación y que en alzada por la vía gubernativa, no puede alterar o añadir los mismos. Secs. 1 y 2 de la Ley de 1ro de marzo de 1902 (30 L.P.R.A. secs. 1771 y 1772); *Fajardo Cabassa* v. *Registrador*, 98 D.P.R. 187 (1969); *Echevarría* v. *Registrador*, 24 D.P.R. 87 (1916); *Guánica Central* v. *Registrador*, 23 D.P.R. 734 (1916). Este enfoque había sido expresado en la norma de que en la vía gubernativa debíamos limitarnos a revisar la calificación del Registrador y no a calificar en primera instancia. *Collazo* v. *Registrador*, 55 D.P.R. 445 (1939); *Natl. City Bank* v. *Registrador*, 46 D.P.R. 22 (1934); *Calenti* v. *Registrador*, 12 D.P.R. 8 (1907).

Los principios esbozados no pierden valor al entrar en vigor el nuevo régimen de derecho hipotecario. El de la nota única del Registrador se recoge en los Arts. 69 y 77, 5to párrafo de la nueva Ley. El efecto que tendría la norma sentada por la opinión del Tribunal sería el que este Tribunal en todo recurso gubernativo tuviera que escudriñar rigurosa y meticulosamente los títulos sin limitarse a lo expuesto en la nota del Registrador, para ir más allá en pos de una nueva calificación. Ello no tendría sentido bajo la nueva ley pues en ésta se dispone que la recalificación *se le pida al Registrador mismo*. No corresponde a este Tribunal. Art. 71.

La ampliación del ámbito de nuestra revisión en recurso gubernativo es igualmente peligrosa bajo la nueva Ley en

cuanto a que en la misma se contempla el recurso no sólo para la denegación de títulos con cualquier tipo de defecto, sino también para cuando el Registrador *inscriba* pero "se [niegue] a reconocer en el asiento, cuando le sea solicitado, todo el valor y efecto legal del documento". Art. 76. ¿Podría este foro, al resolver un recurso gubernativo—de aquel a quien se le ha inscrito su título pero se le niega parte de su valor y efecto legal—entrar a calificarlo antes de resolver lo estrictamente planteado y decidir ordenar la cancelación de la inscripción porque encontramos una falta que se le escapó al Registrador? Por las mismas razones que hoy exponemos, creemos que no.

Los principios cuya defensa asumimos operan en forma separada de la distinción entre faltas subsanables e insubsanables cuya eliminación, a fines de que solo entren títulos perfectos al Registro, es el intento primordial permeado en las innovaciones del legislador. En el empeño loable de purificar nuestro Registro, no podemos obviar la configuración que da solidez al esquema. (3) Mientras no entre en vigor el nuevo ordenamiento, seguiremos alentando como ya lo hemos hecho el que los Registradores en su discreción califiquen de insubsanables aquellos defectos en los títulos que por su *preparación y experiencia* sepan que ameritan se vede su entrada al Registro. *Talcott Inter-Amer. Corp.* v. *Registrador*, 104 D.P.R. 254 (1975); *Royal Bank of Canada* v. *Registrador*, 104 D.P.R. 400 (1975); *P.R. Finance Corp.* v. *Registrador*, 96 D.P.R. 150 (1968); *Autoridad de Fuentes Fluviales* v. *Registrador*, 62 D.P.R. 753 (1944). Ir más allá de eso en la forma en que lo hace la opinión del Tribunal, atenta contra todo el sistema registral inmobiliario.

---

(3) Cossío y Corral, *Instituciones de Derecho Hipotecario*, 1956, pág. 15:

"... un sistema hipotecario no es otra cosa que el conjunto armónico de principios que aspira a producir, mediante la institución del Registro de la Propiedad, la necesaria seguridad al tráfico de los bienes inmuebles y a la constitución de relaciones reales sobre los mismos, ofreciendo con ello sólidas bases en qué asentar el crédito hipotecario. Como todo complejo normativo, el ordenamiento hipotecario se funda en una serie de principios generales que dotan a sus normas de un sentido unitario. Tales principios no son axiomas inconcusos sino más bien creaciones técnicas, instrumentos idóneos para conseguir en la realidad las finalidades específicas perseguidas por la institución registral...."