Voto disidente emitido por la
Juez Asociada Señora Rodríguez Rodríguez, al cual se unen el Juez Asociado Señor Fuster Berlingeri y la Jueza Asociada Señora Fiol Matta.
Disiento de la determinación del Tribunal de anular el auto denegando la petición de certificación que nos fue solicitada por el Panel de Apelaciones de Quiebras de los Estados Unidos para el Primer Circuito. Con nuestra decisión nos negamos a resolver concluyentemente una controversia de derecho civil puertorriqueño, real y recurrente, que se plantea comúnmente ante el Tribunal de Quiebras y que hasta ahora ha evitado la revisión judicial. Nuestra renuencia a intervenir poco abona a la interrelación judi *82 cial armoniosa entre ambos foros e incumplimos, además, con nuestro deber de pautar el Derecho puertorriqueño. El presente recurso de certificación plantea la controversia siguiente: si en el procedimiento ordinario de ejecución hipotecaria, un deudor o tercer poseedor pierde su dominio sobre el inmueble ejecutado cuando se perfecciona la venta judicial o cuando se otorga la correspondiente escritura pública. Resolvemos que, generalmente, la transferencia dominical precisa del instrumento público.
I
Los hechos pertinentes son estos.(1) Oriental Bank and Trust (Oriental) instó una acción ordinaria sobre cobro de dinero y ejecución de hipoteca contra James Patrick Smyth Delgado y Sheyla Ivonne Puig Caballero (deudores) en el Tribunal de Primera Instancia, Sala Superior de Caguas. Efectuados los procedimientos de rigor, hubo una venta judicial el 28 de abril de 2005. Allí se adjudicó un inmueble de los demandados a Oriental, quien recibió la buena pro. Sin embargo, éstos presentaron una petición de quiebra el 3 de mayo de 2005, antes de que el alguacil otorgara la escritura de venta judicial. El 15 de junio de 2005, a instancia de Oriental, el Tribunal de Primera Instancia ordenó que se expidiera el Mandamiento para lanzar a los deudores.
Por otro lado, Oriental presentó una moción ante el Tribunal de Quiebra, el 13 de junio de 2005, para que éste levantara la paralización automática y le permitiera procurar el lanzamiento (evict) de los demandados en el Tribunal de Primera Instancia. Adujo que el inmueble era suyo, pues la adjudicación mediante venta judicial le bastó *83 para adquirir el dominio. Respondieron los demandados que, ausente la tradición instrumental, el inmueble pertenecía al caudal de quiebra. El tribunal acogió la posición de Oriental y levantó la paralización el 2 de septiembre de 2005. Los demandados acudieron oportunamente al Panel de Apelaciones de Quiebra de los Estados Unidos para el Primer Circuito (Panel).
El Panel, a su vez, presentó motu proprio un recurso de certificación ante nos. Observó, en primer lugar, que la caracterización del Derecho puertorriqueño resulta determinante en este caso. Según la Sec. 541(a)(1) del Código de Quiebra, 11 U.S.C.A. sec. 541(a)(1), el caudal de quiebra incluye “all legal or equitable interests of the debtor in property as of the commencement of the case”. Se entiende que el Derecho federal determina si un “interés en propiedad” es parte del caudal, mientras que el Derecho estatal determina si existe tal interés. Así, se ha resuelto que la See. 541, supra, incluye cualquier derecho propietario (rights to property) que tenga el deudor dentro de la jurisdicción del tribunal al momento de presentar su petición de quiebra, mas no aquellos bienes sobre los cuales haya per-dido todo interés propietario, antes de la petición, por vía de ejecución o desahucio (eviction). Consecuentemente, para determinar si el inmueble aquí disputado es parte del caudal de quiebra, huelga saber si la venta judicial privó a los demandados de todo interés propietario sobre el mismo.
El Panel continúa señalando que los tribunales de quiebra se han dividido con respecto al efecto de una venta judicial al amparo del procedimiento ordinario de ejecución de hipoteca. Algunos han entendido que la Regla 51.8 de Procedimiento Civil, 32 L.P.R.A. Ap. III, caracteriza la escritura de venta judicial como un requisito sine qua non para la transferencia del dominio, lo cual significa que el deudor tiene un interés en propiedad hasta el otorgamiento de dicho instrumento. Otros tribunales han resuelto, al amparo de Ríos v. Banco Popular, 81 D.P.R. 378 *84 (1959), que la escritura de venta judicial es un acto simbólico cuya ausencia no impide la transferencia del dominio y, por ende, la pérdida de todo interés propietario. Destaca el foro peticionario que esta desavenencia responde a la ausencia de un claro precedente nuestro o del Tribunal de Apelaciones del Primer Circuito.(2) Memorandum and Order Certifying and Requesting Consideration of Legal Question to the Puerto Rico Supreme Court (Memorandum and Order), págs. 3-5.
En mérito de lo anterior, se nos ha certificado la pregunta siguiente:
... the question raised here is whether the Debtors were divested of all interest in the Property upon the adjudication of the Property at the pre-petition judicial sale, but before the marshal executed the public deed. There is no clear precedent as to whether, under Puerto Rico law, title to real property is transferred upon “adjudication” at a judicial sale, or upon the marshal’s subsequent execution of a public deed to the buyer. Memorandum and Order, págs. 5—6.
Examinado el recurso de certificación, concedimos a las partes un término simultáneo de veinte días para someter sus alegatos, contados a partir del 11 de mayo de 2006. Oriental compareció oportunamente. Los deudores solicitaron una prórroga de días el 7 de junio de 2006 “para someter [su] alegato”. Concedimos que el término solicitado comenzara a partir del 28 de junio de 2006.
Sin embargo, el 12 de junio de 2006 el Tribunal de Quiebra del Distrito de Puerto Rico desestimó el caso, “[u]pon de trustee’s application for dismissal of the above captioned case on the grounds that the debtor(s) failed to comply with the plan and the payments required thereunder, and the debtor(s) having failed to timely reply to said motion ...”. Una copia de dicha orden la anejaron los demandados *85 a su Moción sobre Academicidad del Recurso, presentada el 14 de julio de 2006, es decir, aproximadamente un mes después de la desestimación. Indicaron que habrían de atenerse a la misma e informar al Panel, hechos que hacían académicas su apelación y la correspondiente certificación.
En vista de ello, concedimos un plazo de cinco días a Oriental y a José Carrión Morales, el Síndico de Quiebra bajo el Capítulo 13, mediante una Resolución emitida y notificada los días 4 y 7 de agosto de 2006, para que se expresaran al respecto. El 11 de agosto de 2006, Oriental solicitó una prórroga de veinte días. Adujo que, a pesar de sus esfuerzos, no había recibido una copia completa del escrito de los demandados. Accedimos a lo solicitado y Oriental compareció, oportunamente, mediante una Moción en Oposición a Desestimación. Sostiene que la cuestión certificada es recurrente y capaz de evitar la adjudicación. Finalmente, el Panel desestimó la apelación el 21 de septiembre de 2006, a instancia de los deudores.(3)
II
A. Los tribunales puertorriqueños están impedidos de resolver casos académicos. Un caso se torna académico cuando cesa su condición de controversia viva y presente *86 debido al transcurso del tiempo. Véanse, e.g.: Emp. Pur. Des., Inc. v. H.I.E.Tel., 150 D.P.R. 924 (2000); P.P.D. v. Gobernador I, 139 D.P.R. 643 (1995). Esta doctrina refleja, en cierta medida, nada más que el requisito de una acción legitimada en el tiempo, y su propósito es evitar los precedentes innecesarios así como el uso inadecuado de los recursos judiciales. P.N.P. v. Carrasquillo, 166 D.P.R. 70 (2005).
Ahora, existen varias excepciones a la referida prohibición. Un caso académico puede resolverse cuando presenta alguna cuestión recurrente y capaz de evadir la adjudicación. Igual excepción aplica cuando la academicidad ha sido provocada por el demandado mediante una conducta sin indicios adecuados de permanencia. En tercer lugar, es posible atender una controversia aparentemente académica cuando su adjudicación tendrá consecuencias colaterales sobre las partes. Puede ocurrir, además, que una controversia se haya tornado académica para el representante de una clase, mas no para otros miembros de ella. Estas excepciones procuran evitar, entre otras cosas, que la misma pregunta se litigue repetidamente en los tribunales. P.N.P. v. Carrasquillo, supra. Véanse, también: Cruz v. Administración, 164 D.P.R. 341 (2005); Angueira v. J.L.B.P., 150 D.P.R. 10 (2000).
La primera excepción indicada se aplica con miras al balance de tres consideraciones. El factor principal es si existe una probabilidad razonable de que recurra la controversia. Esta podría surgir nuevamente entre las mismas partes, en cuyo caso resulta más prudente su adjudicación, pero la identidad de partes no es imperativa. Por último, debe existir una probabilidad sustancial de que la controversia, a pesar de ser recurrente, evite la adjudicación. Cruz v. Administración, supra; Angueira v. J.L.B.P., supra.
El caso de autos se ajusta a la excepción reseñada. Sin *87 duda que la cuestión certificada es recurrente.(4) Ahora, ¿qué probabilidad tiene de evadir nuestra adjudicación en el futuro? Obsérvese que dicha cuestión surge con muy poca frecuencia en los tribunales del Estado Libre Asociado. En el ámbito federal ha surgido principalmente en los tribunales de quiebra y debido a la norma de paralización automática, cuyos efectos cesan con el descargue o con la desestimación del caso, entre otras circunstancias. Véase See. 362 del Código de Quiebra, 11 U.S.C.A. see. 362. Dichos tribunales, a su vez, operan en el contexto de un proceso relativamente expedito y matizado por la precaria situación del deudor. Así lo demuestra el caso de marras, donde se presentó una petición de quiebra y se desestimó porque los deudores incumplieron su plan de reorganización, todo ello en aproximadamente trece meses. Este conjunto de factores produce una probabilidad sustancial de que la cuestión planteada evite nuestra futura adjudicación.
B. Recientemente, en Guzmán v. Calderón, 164 D.P.R. 220 (2005), nos expresamos sobre las consecuencias que ha tenido el Art. 3.002(f) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003 (4 L.P.R.A. sec. 24s) (Ley de la Judicatura), sobre los requisitos de la certificación inteijurisdiccional. Surge de nuestra opinión que dicho recurso es de carácter discrecional y exige el cumplimiento de los siguientes requisitos: (1) que la certificación proceda de un tribunal mencionado en el Art. 3.002(f), supra; (2) que la cuestión certificada esté implicada en un asunto judicial ante dicho foro; (3) que la cuestión certificada pueda determinar el resultado con respecto al referido asunto judicial; (4) que la cuestión certificada sea de *88 derecho puertorriqueño, aun cuando pueda estar relacionada con cuestiones de derecho federal o estatal, y (5) que no exista un precedente claro de este Tribunal con respecto a la cuestión certificada. La Regla 53 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, y la Regla 25 de este Tribunal, 4 L.P.R.A. Ap. XXI-A, deben interpretarse en armonía con estas normas.
Por otro lado, importantes consideraciones de política pública subyacen el mecanismo de certificación interjurisdiccional. En Santana v. Gobernadora, 164 D.P.R. 28, 43 (2005), apuntamos que este mecanismo “propicia [la] interrelación judicial armoniosa y de respeto mutuo entre los dos sistemas judiciales soberanos que conviven en el Estado Libre Asociado”, al hacer viable que este Tribunal defina concluyentemente los parámetros del Derecho puertorriqueño.
Como discutiremos a continuación, el recurso bajo consideración cumple a cabalidad con los parámetros previamente enumerados. Ciertamente, el Panel no es uno de los tribunales enumerados en el Art. 3.002(f) de la Ley de la Judicatura, supra, y en la Regla 25(a) del Reglamento del Tribunal Supremo, supra.(5) Empero, su Memorandum and Order señala, correctamente, que se trata de una entidad cuyas facultades derivan del Tribunal de Apelaciones de Estados Unidos para el Primer Circuito, y cuyas características la convierten en el equivalente funcional de un tribunal federal de distrito. Añade que los tribunales de otras jurisdicciones estadounidenses han aceptado recursos de certificación provenientes de los tribunales de quiebra y los paneles apelativos, aun cuando sus reglamentos contienen disposiciones similares a nuestra Regla 25(a), supra. Memorandum and Order, pág. 6 n. 2.
*89 Veamos los requisitos segundo y tercero. Cuando el Panel instó su recurso, la cuestión certificada estaba implicada en un asunto ante dicho tribunal, cuyo resultado podía depender de la certificación. Por ejemplo, si la transferencia del dominio ocurrió al perfeccionarse la venta judicial, el inmueble subastado no pertenecía al caudal de quiebra y procedía levantar la paralización automática. Con ello se verifican los requisitos pertinentes. La posterior desestimación del caso suscita un problema de academicidad que debemos resolver —y hemos resuelto— conforme al derecho local.
También se han cumplido los requisitos cuarto y quinto. La cuestión certificada versa sobre el derecho puertorriqueño, y su íntima relación con una cuestión de derecho federal no impide el recurso de certificación. Por otro lado, este Tribunal no ha establecido un precedente claro sobre la controversia certificada, a pesar de su importancia en el tráfico jurídico, todo lo cual explicaremos más adelante.
Finalmente, al atender esta petición de certificación, cumplimos con nuestra función normativa de pautar el Derecho puertorriqueño, a la vez que promovemos la interrelación de los dos soberanos que convergen en nuestra jurisdicción.
f—1 I—1 HH
La cuestión certificada se refiere a la ejecución de créditos hipotecarios mediante el llamado procedimiento ordinario. Comenzamos, pues, con un análisis de esa figura.
A. En atención a la controversia de marras, podemos definir la hipoteca como “ ‘un derecho real que ... sujeta o vincula lo hipotecado, cualquiera que sea su titular, al poder de exigir eventualmente la realización de su valor así como la adopción de medidas dirigidas a salvaguardarlo, *90 todo en seguridad o garantía de la efectividad de alguna obligación dineraria ”, (Énfasis suprimido.) L.R. Rivera Rivera, Derecho Registral Inmobiliario Puertorriqueño, San Juan, Jurídica Editores, 2002, pág. 481, citando a R.M. Roca Sastre, Derecho Hipotecario, 8va ed., Barcelona, Ed. Bosch, 1995, T. VII, págs. 113-114. Véase Junta Retiro Maestros v. Registrador, 109 D.P.R. 569, 572-573 (1980). De modo que la hipoteca permite el cobro de una obligación dineraria, en determinadas circunstancias, mediante la “realización del valor” del inmueble hipotecado e independientemente de quien sea su titular.
Tal “realización de valor” se logra mediante la enajenación del inmueble hipotecado. A. López y López, y V. Montés Panadés, Derechos reales y derecho inmobiliario registral, Valencia, Tirant lo Blanch, 1994, pág. 740 (“Instado el correspondiente procedimiento para la ejecución de la hipoteca, es decir, en ejercicio del crédito hipotecario, tras los trámites oportunos se procede a la venta en pública subasta del inmueble hipotecado. Esto es lo que llamamos la realización del valor del bien”). Esto quiere decir que nuestro ordenamiento prohíbe el pacto comisorio, mediante el cual un acreedor hipotecario recibe el derecho de apropiarse o disponer del inmueble para cobrar su crédito vencido e insatisfecho. Arts. 1757,1758 y 1780 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 5002, 5003 y 5048. Así se protege al deudor o tercer poseedor de una disparidad entre la deuda y el valor del inmueble. También se permite que los acreedores con gravámenes posteriores cobren sus acreencias del valor realizado en exceso del crédito hipotecario ejecutado, lo cual facilita el tráfico jurídico al hacer más atractivos dichos gravámenes posteriores. Rivera Rivera, op. cit., pág. 482.
El modo de enajenar los inmuebles hipotecados es la venta en subasta pública. Evidentemente, nuestro legislador ha insistido en la subasta por razones análogas a las que desvirtúan el pacto comisorio. Se pretende ejecutar el *91 derecho crediticio mediante un procedimiento que sea capaz de realizar un valor adecuado y que esté abierto a la participación de los interesados, todo ello en protección del acreedor, del deudor, del tercer poseedor, de los acreedores con gravámenes posteriores y del tráfico jurídico.(6)
Antes bien conviene recordar que se admiten tres mecanismos distintos para cobrar un crédito hipotecario. En Atanacia Corp. v. J.M. Saldaña, Inc., 133 D.P.R. 284, 292 (1993), caracterizamos las alternativas del modo pública:
Actualmente, nuestro ordenamiento jurídico le brinda al acreedor hipotecario tres (3) vías procesales distintas para hacer efectivo su crédito y ejecutar su garantía real. Uno es el procedimiento de ejecución de hipoteca por la vía ordinaria (30 L.P.R.A. see. 2701; Regla 51.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III; otro es el procedimiento ejecutivo sumario (30 L.P.R.A. see. 2701 et seq.), y además, puede instar la acción ordinaria de cobro de dinero, con embargo de la finca si lo desea, en aseguramiento de sentencia (Regla 51 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill DI. (Citas omitidas.)
B. A pesar de su importancia y frecuente uso, no ha sido sencillo precisar la naturaleza jurídica de los mecanismos de ejecución hipotecaria.(7) Mas un análisis de nuestra *92 jurisprudencia revela que se han conceptualizado como instituciones de carácter jurídico-procesal inspiradas en el contrato de compraventa.
Por un lado, hemos indicado que la fase post sentencia del procedimiento ordinario es “eminentemente ejecutiva”. Atanacia Corp. v. J.M. Saldaña, Inc., supra, pág. 293. Es por ello que dicho mecanismo se rige por determinadas reglas de procedimiento civil, unidas a ciertas disposiciones procesales de la Ley Hipotecaria y del Registro de la Propiedad (Ley Hipotecaria), cuyo incumplimiento se ha examinado al amparo de la doctrina del debido proceso de ley. Arroyo v. Ortiz y Franco, 133 D.P.R. 62, 67—68 y 75—76 (1993). Incluso, expresamos lo siguiente en Banco Gub. de Fomento v. Abarca Warehouses, 109 D.P.R. 132, 134—135 (1979):
La venta forzosa judicial carece de la base consensual del contrato de compra y venta definido en el Art. 1334 del Código Civil, 31 L.P.R.A. see. 3741. La intervención del alguacil dirigiendo la subasta para la realización de los bienes, no es la de un contratante pactando libremente sobre algo que le pertenece, sino la de un funcionario del Estado cumpliendo el mandamiento de ejecución emitido por el tribunal. El alguacil no es mandatario del deudor cuyos bienes ejecuta, y sí el brazo eficaz de la justicia para que el crédito del ejecutante quede satisfecho. En el descargo de su deber ministerial debe ajustarse a las Reglas de Procedimiento Civil y en el caso por éstas imprevisto seguirá la norma que mejor garantice la corrección e integridad de la subasta. (Notas omitidas.)
No obstante, se ha indicado que el mecanismo de ejecución hipotecaria comparte múltiples rasgos con el contrato de compraventa. En Banco Gub. de Fomento v. Abarca Warehouses, supra, pág. 134 esc. 1, cualificamos las expresiones citadas con unos comentarios de Roca Sastre, cuyo contenido vale la pena reproducir parcialmente:
*93 “El pensamiento del legislador en punto a la naturaleza de la adjudicación al rematante o adjudicatario es ver en ella una especie de compraventa, ya que a veces habla de Venta’ y de ‘precio’. Guasp se opone a esta tesis, por entender que falta el consentimiento del dueño, pero como en definitiva, se produce una transmisión por precio, cabe asimilar en muchos aspectos este acto al contrato de compraventa, sin olvidar que dada la intervención de la justicia en esta realización de bienes ella participa del carácter de un acto estatal, circunstancia que hacen destacar los procesalistas.” (Énfasis y nota suprimidos.) Roca Sastre, op. cit., 6ta ed., 1968, T. 4, Vol. 2, pág. 1062.
Así mismo, hemos observado que, “[s]alvo contadas ex-cepciones, el foro judicial deja en manos del alguacil del tribunal y del acreedor ejecutante el proceso post sentencia de subasta, venta y adjudicación de los bienes ejecutados para satisfacer el crédito”. (Escolio omitido.) Afanada Corp. v. J.M. Saldaña, Inc., supra, pág. 294. También se ha indicado que los alguaciles intervienen en las escrituras de venta judicial como representantes de los deudores, y que tales escrituras son documentos notariales —no judiciales— para fines de la calificación registral. C.R.U.V. v. Registrador, 117 D.P.R. 662, 667-668 (1986); Atanacia Corp. v. J.M. Saldaña, Inc., supra, pág. 294; Rigores v. Registrador, 165 D.P.R. 710 (2005). Véase, además, Coop. Ahorro y Créd. v. Registrador, 142 D.P.R. 369, 384 (1997).
Lo cierto es que “[n]o constituye un tema pacífico el de la determinación de la naturaleza jurídica de la subasta judicial”. M. Rivera Fernández, La Ejecudón Hipotecaria Inmobiliaria, Madrid, Ed. Dilex, S.L., 2004, pág. 364. El profesor Rivera Fernández concluye, no empece, que “la doctrina civilista se inclina por entender que estamos ante un contrato de venta forzosa del bien, ya que en ella concurren los dos elementos reales de la misma: cosa y precio, hay comprador y un vendedor ...”. Loe. cit. Véanse: STS 20 marzo 1964 (A. 1450), STS 9 marzo 1985 (A. 1132) y 25 octubre 1999 (A. 7623).
La interrelación de la subasta judicial con la compraventa se deduce también del Art. 1378A del Código Civil de *94 Puerto Rico, 31 L.P.R.A. sec. 3846a, comprendido dentro del título referente a la compraventa, cuando dice que “en las ventas judiciales nunca habrá lugar a la responsabilidad por daños y peijuicios; pero sí a todo lo demás dispuesto en los artículos anteriores”.
Surge de los precedentes reseñados y de la normativa expuesta una concepción jurídico-procesal de la ejecución hipotecaria, cuyas normas se inspiran en la compraventa. Es decir, tratándose de un procedimiento jurídico coactivo, su reglamentación está pautada en las correspondientes normas procesales. Pero éstas han sido elaboradas e interpretadas como si tuvieran el propósito de configurar una especie de compraventa entre deudor y rematante (o acreedor adjudicatario). Por ende, las normas aplicables a la compraventa vienen a facilitar la interpretación y llenar las lagunas del esquema procesal. La ejecución hipotecaria, que supone la transmisión de un patrimonio a otro, se embebe dentro de la naturaleza traslaticia del contrato de compraventa.
IV
Nuestra jurisprudencia no ha establecido definitivamente cuándo se pierde el dominio sobre un inmueble cuya hipoteca ha sido ejecutada. En Ríos v. Banco Popular, supra, examinamos una controversia sobre el momento en que comienza a correr el término prescriptivo de la acción subsidiaria sobre daños y perjuicios proveniente de la nulidad de un procedimiento ejecutivo sumario. Resolvimos que dicho plazo corre “desde el instante en que se despoja ilegalmente al deudor de su propiedad, o sea, desde la fecha de la subasta y adjudicación de los bienes hipotecados”, íd., pág. 390.
Sin embargo, el carácter normativo de Ríos v. Banco Popular, supra, es limitado. La controversia allí trabada se refería al procedimiento sumario y no exigía un análisis *95 detenido del momento en que se pierde la titularidad del inmueble ejecutado. Es por ello que las expresiones del Tribunal carecen de una fundamentación adecuada. Posteriormente, la norma de Ríos quedó en jaque al indicarse en Coop. Ahorro y Créd. v. Registrador, supra, pág. 382, lo siguiente:
Una vez preparada la referida acta y adjudicada la propiedad, el alguacil debe proceder entonces a otorgar una escritura pública de traspaso en favor del rematante o del adjudicatario. Véanse: Regla 51.8 de Procedimiento Civil, supra, para el procedimiento ordinario de ejecución, y Art. 230 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. see. 2730, para el procedimiento sumario. Esta escritura, contrario al acta de subasta, no tiene el propósito de reflejar lo acontecido en la subasta, sino que se otorga con el único fin de transferir el título de propiedad. (Enfasis suprimido.)
Algo similar expresamos, recientemente, en Rigores v. Registrador, supra, pág. 725:
... [A]nte la importancia de la exigencia que le impone la propia Ley Hipotecaria al acreedor hipotecario, el Registrador será responsable de velar porque se haya cumplido con el requisito de notificación al titular registral, previo a la inscripción de una escritura de venta judicial mediante la cual se transfiere el derecho de propiedad a otra persona. (Enfasis suprimido.)
Ahora bien, las controversias planteadas en Cooperativa y en Rigores no se referían al momento de la transferencia del dominio, por lo cual sus expresiones no revocaron definitivamente lo resuelto en Ríos.(8)
V
El procedimiento ordinario de ejecución hipotecaria está reglamentado principalmente en las Reglas 51.2, 51.3 y *96 51.8 de Procedimiento Civil, supra, así como las disposiciones de la Ley Hipotecaria, que enumera su Art. 201 (30 L.P.R.A. sec. 2701).(9) Dichos preceptos no indican expresamente cuándo se pierde el dominio sobre un inmueble hipotecado. Sin embargo, un análisis integrador de las nor-mas procesales, su contexto y sus propósitos nos convencen de que hubo la intención legislativa de exigir el otorgamiento de la escritura de venta judicial previo a la pérdida del dominio.
A. Es preciso acudir, en primer lugar, a las Reglas de Procedimiento Civil pertinentes. Señala la Regla 51.2, inter alia:
El procedimiento para ejecutar una sentencia u orden para el pago de una suma de dinero y para recobrar las costas concedidas por el tribunal será mediante mandamiento de ejecución. El mandamiento especificará los términos de la sentencia y la cantidad pendiente de pago. Todo mandamiento de ejecución será dirigido al alguacil. 32 L.P.R.A. Ap. III.
De modo que el trámite ejecutivo comienza definitivamente con el mandamiento dirigido al alguacil. La Regla 51.3(b) de Procedimiento Civil, 32 L.P.R.A. Ap. III, añade, inter alia, que la ejecución de hipotecas y otros gravámenes será mediante una venta judicial.(10)
*97 Los efectos pertinentes del mandamiento ejecutorio surgen de la Regla 51.3(a) de Procedimiento Civil, supra. Esta se dedica principalmente a las sentencias que ordenan a una parte a realizar ciertos actos específicos. Añade, sin embargo:
En todos los casos en que el tribunal ordenare una venta judicial de bienes muebles o inmuebles, dicha orden tendrá la fuerza y efecto de un auto disponiendo la entrega física de la posesión, debiendo consignarse así en el fallo u orden para que el alguacil u otro funcionario actuante proceda a poner al comprador en posesión de la propiedad vendida en el plazo de veinte (20) días desde el de la venta o subasta, sin perjuicio de los derechos de terceros que no hayan intervenido en el procedimiento. 32 L.P.R.A. Ap. Ill, R. 51.3(a).
Obsérvese cómo esta regla no priva al deudor del dominio. Sólo establece que el mandamiento debe ordenar la entrega del mueble o inmueble al funcionario correspondiente. Cumplido ese requisito, el mandamiento constituye una orden al deudor para que transfiera la posesión de la cosa al tribunal.
Por otro lado, la Regla 51.8 de Procedimiento Civil, supra, establece los pormenores del procedimiento para las ventas judiciales, y su inciso (d) es pertinente a la controversia de marras:
... Verificada la venta, el oficial a cargo de la misma levantará un acta por escrito describiendo lo acontecido durante la subasta y la adjudicación en venta al mejor postor, quien pagará el importe de la venta en dinero efectivo o en cheque certificado a la orden del oficial en cuestión. En casos extraordinarios, el tribunal podrá ordenar cualquier otra forma de pago. Si se tratare de bienes muebles, el oficial hará entrega al comprador de los bienes vendidos y si éste lo solicitare, le hará entrega de una copia del acta de subasta debidamente certificada por él. Dicha copia certificada constituirá evidencia oficial del título del comprador sobre los bienes vendidos subrogándole en los derechos del vendedor sobre dichos bienes. En caso de venta de propiedad inmueble, el oficial encargado de la venta otorgará escritura pública a favor del comprador ante el notario que este último seleccione, abonando éste el importe de tal escritura.
*98 Este inciso establece el procedimiento que debe seguirse una vez se haya perfeccionada la venta en una subasta pública. El comprador debe cumplir inmediatamente su obligación de pagar el precio. Entonces el alguacil adjudica la cosa al deudor y otorga un Acta de subasta.
Los procedimientos a partir de la adjudicación están pautados en las últimas tres oraciones de la citada Regla 51.8(d) de Procedimiento Civil. En el caso de los bienes muebles, se dispone que el alguacil entregará la cosa al comprador y que la copia certificada del Acta no es el título, sino su evidencia. Con respecto a los inmuebles, se indica que el alguacil otorgará una escritura de venta judicial. Como este precepto yace justamente después del que se refiere a los bienes muebles, y dado que la regla no establece expresamente el modo de transferir la posesión y evidenciar el título, entendemos que tales son las funciones de la escritura pública.
Así interpretada, la Regla 51.8(d) de Procedimiento Civil, supra, no establece cuándo se transfiere el dominio del deudor al comprador. El alguacil tiene una obligación de poner al comprador en posesión de los bienes, sean muebles o inmuebles. Sin embargo, la regla no aclara el por qué de esa obligación. Quizás el alguacil debe entregar la cosa al comprador porque ésta le pertenece al comprador. O quizás debe entregarla para culminar el traspaso dominical. La referida Regla 51.8(d) guarda silencio al respecto.
B. Antes bien, varias disposiciones de la Ley Hipotecaria sugieren que la intención legislativa ha sido exigir una escritura de venta judicial para la transferencia del dominio. Su Art. 231 establece que el tribunal ordenará la cancelación de los asientos regístrales que deban cancelarse debido a la ejecución, “una vez otorgada la escritura de traspaso de la finca o derecho hipotecado a instancia del rematante”. 30 L.P.R.A. see. 2731.(11) El Art. 232 establece, *99 a su vez, que un acreedor adjudicatario debe entregar la cantidad correspondiente al derecho de hogar seguro del deudor o tercer poseedor, si lo hubiese, antes de otorgar la escritura de adjudicación judicial. 30 L.P.R.A. sec. 2732.(12) Por último, obsérvese que el Art. 228 distingue implícitamente entre la adjudicación y la transferencia del dominio. 30 L.P.R.A. sec. 2728.(13)
C. El contexto jurídico de las normas examinadas confirma nuestra apreciación de la intención legislativa. Tratándose de la transferencia de un derecho real, es preciso acudir al Art. 549 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 1931, que dispone:
La propiedad se adquiere por la ocupación.
La propiedad y los demás derechos sobre los bienes se adquieren y transmiten por la ley, por donación, por sucesión testada e intestada y por consecuencia de ciertos contratos mediante la tradición.
Puede también adquirirse por medio de la prescripción.
Hemos acogido el criterio doctrinal que atribuye a este artículo la incorporación generalizada del sistema de título *100 y modo a nuestro derecho civil patrimonial. Ramírez Quiñones v. Soto Padilla, 168 D.P.R. 142 (2006). Véanse, también: M. Albaladejo, Artículo 609, en Comentarios al Código Civil y compilaciones forales, Madrid, Ed. Rev. Der. Privado, 1987, T. VIII, Vol. 1, pág. 3; M. Navarro Castro, Tradición Instrumental, Barcelona, Ed. Bosch, 1997.
Con el sistema de título y modo se reglamenta la transferencia de ciertos derechos reales en determinadas circunstancias. Entre esos derechos figura el dominio, y entre las circunstancias necesarias figura el que se trate de una transferencia contractual. J. Puig Brutau, Fundamentos de Derecho Civil, 2da ed., Barcelona, Ed. Bosch, 1971, T. Ill, Vol. I, págs. 359-360; Albaladejo, op. cit., pág. 12. Evidentemente, la doctrina de título y modo aplica al contrato de compraventa e implica que su perfección no basta para transferir el dominio, sino que genera obligaciones de carácter personal. Tal ha sido la norma reiterada en esta jurisdicción. Véanse, e.g.: Benítez Flores v. Llompart, 50 D.P.R. 670 (1936); Varcárcel v. Sancho Bonet Tes., 61 D.P.R. 213 (1942); Segarra v. Vda. de Lloréns, 99 D.P.R. 60 (1970).
Nuestro ordenamiento reconoce varias formas de lograr la tradición, sin hacer una lista taxativa. Arts. 1351-1353 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 3811-3813; Segarra v. Vda. de Lloréns, supra. Entre ellas figura el modo instrumental; supuesto que surge cuando una compraventa se otorga mediante una escritura pública y las partes no expresan su intención de impedir la tradición. Art. 1351 del Código Civil de Puerto Rico, supra.
Es natural, entonces, interpretar las normas procesales examinadas en el contexto de la doctrina de título y modo, especialmente cuando la venta judicial es una figura jurídico-procesal inspirada en la compraventa. Específicamente, hemos visto que la Regla 51.8(d) de Procedimiento Civil, supra, es clara al disponer que los alguaciles deben otorgar una escritura de venta judicial para transferir la posesión de los inmuebles subastados mediante el procedi *101 miento ordinario de ejecución hipotecaria. Lo que no está claro es por qué. ¿Será que el inmueble pertenece al comprador o que huelga un traspaso posesorio para transferir el dominio? La firme trayectoria de la doctrina de título y modo, unida a la intención de configurar un mecanismo procesal inspirado en la compraventa, abona a que respaldemos la segunda alternativa.
D. El resultado que arrojan las normas reseñadas y contextualizadas no desvanece ante las consideraciones pragmáticas pertinentes. De éstas surge la razón que pudo tener nuestro legislador al insistir en la escritura de venta judicial.
Ese requisito de traspaso instrumental ofrece alguna protección a los deudores y a la estabilidad del tráfico jurídico. Cuando se otorga una escritura pública, el notario asegura que ésta cumple con las formalidades pertinentes, que es legal y verdadera, y que contiene una transacción válida y legítima. Véanse, e.g.: Art. 2 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2002; In re González Maldonado, 152 D.P.R. 871, 895 (2000); Deliz et als. v. Igartúa et als., 158 D.P.R. 403 (2003). Por ende, si hubiera alguna irregularidad procesal o sustantiva, el notario debe abstenerse de autorizarla. Tal intervención notarial constituye un último cedazo jurídico antes de configurarse la transferencia del dominio mediante un procedimiento que, en gran medida, se ha dejado en manos del acreedor ejecutante y del alguacil. Es por ello que la escritura de venta judicial protege a los deudores y facilita el tráfico jurídico al procurar su estabilidad.
Somos conscientes de que existen consideraciones pragmáticas tendientes a desvirtuar el requisito de tradición instrumental. Éste implica, por ejemplo, que los deudores serán dueños por un periodo durante el cual deben entregar (o han entregado) la posesión del inmueble al Tribunal, y cuyo dominio probablemente perderán, habiéndose per *102 feccionado la venta judicial. Tal situación, anómala desde un punto de vista jurídico y económico, perjudica al deudor en la medida que éste deba cumplir con las obligaciones patrimoniales correspondientes a un derecho dominical sin grandes beneficios. La dilación del traspaso también perjudica a los acreedores en la medida que les impide tomar posesión del inmueble para evitar los daños que no sean prácticos atender mediante la intervención judicial. Sin embargo, los autos están huérfanos de evidencia tendiente a demostrar que estas dificultades superan los beneficios de la tradición instrumental con tal claridad como para demostrar que nuestro legislador quiso prescindir de la misma.
E. Debemos concluir, en síntesis, que la intención legislativa ha sido la de exigir una escritura de venta judicial antes de privar a los deudores de su derecho dominical mediante un procedimiento ordinario de ejecución hipotecaria. Así lo intiman varias disposiciones de la Ley Hipotecaria, los matices contractuales del proceso ejecutivo ordinario y la función fehaciente del notariado puertorriqueño. Acogemos dicha postura en carácter de norma general, sin expresarnos hoy sobre las excepciones o normas complementarias que podrían encomendarse cuando las partes no cumplen adecuadamente sus respectivas obligaciones.
VI
Por los fundamentos expresados, soy del criterio que este Tribunal debió expedir la Petición de Certificación presentada y responder a la pregunta certificada a los efecto de que, generalmente, un deudor o tercer poseedor pierde su dominio sobre el inmueble objeto de un procedimiento ordinario de ejecución hipotecaria al otorgase la correspondiente escritura de venta judicial.

 Véanse: Memorandum and Order Certifying and Requesting Consideration of Legal Question to the Puerto Rico Supreme Court (Memorandum and Order), págs. 2-3; Acta de Subasta, Apéndice del Alegato de Oriental Bank and Trust (Apéndice), págs. 39-40; Orden del Tribunal de Primera Instancia, Sala de Caguas, de 15 de julio de 2005, Apéndice, págs. 41-^42.

 Evidentemente, una decisión del Tribunal de Apelaciones de Estados Unidos para el Primer Circuito no resolvería definitivamente la cuestión, aunque vincularía al Panel de Apelaciones de Quiebras de Estados Unidos para el Primer Circuito.

 La desestimación ocurrió al amparo de la Regla 8001(c)(2) de Procedimiento de Quiebra, y la Regla 8001—1(c)(2) del Panel. Dispone la primera:
“If an appeal has been docketed and the parties to the appeal sign and file with the clerk of the district court or the clerk of the bankruptcy appellate panel an agreement that the appeal be dismissed and pay any court costs or fees that may be due, the clerk of the district court or the clerk of the bankruptcy appellate panel shall enter an order dismissing the appeal. An appeal may ¿so be dismissed on motion of the appellant on terms and conditions fixed by the district court or bankruptcy appellate panel.” 11 U.S.C. R. 8001(c)(2).
La segunda regla dispone:
“If an appeal has been docketed in the BAP, it may be dismissed by the parties in the manner set forth in Rule 8001(c)(2) of the Federal Rules of Bankruptcy Procedure. An appeal may also be dismissed on motion of all appellants, if no response or opposition is filed within ten (10) days after service of the motion, on terms and conditions determined by the BAP.” Bankruptcy Appellate Panel for the First Circuit, Local Rules, April 3, 2002, pág. 2.

 Los siguientes casos discuten el problema y hacen referencia a múltiples litigios donde ha surgido: In re Rodríguez, 334 B.R. 754 (1er Cir. B.A.P. 2005); In re Ortiz, 306 B.R. 727 (Bankr. D. P.R. 2004); In re Hernández, 244 B.R. 549 (Bankr. D. P.R. 2000).

 Los tribunales enumerados son el Tribunal Supremo de Estados Unidos, los Tribunales de Apelaciones de Circuito de Estados Unidos, los Tribunales de Distrito de Estados Unidos y el más alto tribunal apelativo de cada jurisdicción estatal estadounidense.

 Esta caracterización deriva de nuestras expresiones previas sobre los propósitos de varias normas aplicables a la ejecución hipotecaria. Véanse: Coop. Ahorro y Créd. v. Registrador, 142 D.P.R. 369, 379, 385 (1997); Arroyo v. Ortiz y Franco, 133 D.P.R. 62, 70 (1993); Ponce Federal v. Arblas Inds. Supp., 132 D.P.R. 687, 690 (1993); Junta Retiro Maestros v. Registrador, 109 D.P.R. 569, 571-572, 574 (1980); Ponce Federal Savings v. Gómez, 108 D.P.R. 585, 588-590 (1979).

 Badenes Gasset resume algunas de las posturas doctrinales del derecho comparado, especialmente el derecho italiano, al dirimir si existe la obligación de saneamiento por evicción en las ventas forzosas:
“Hay quien afirma que el vendedor es el deudor expropiado, mientras que el Tribunal no es más que el órgano del Estado por medio del cual se actúa la transmisión coactiva. ... En cambio, otros sostienen que el vendedor es el acreedor en virtud de un derecho propio que se ejercita por vía de acción ...; otros, que el vendedor es el Estado, en el ejercicio de un acto de imperio, perteneciente a la esfera de los actos del poder ejecutivo, como sucede en todas las formas de expropiación ...; hay quien niega que se trate de contrato, considerando, en cambio, aquellas ventas como actos unilaterales traslativos de propiedad a título oneroso ..., y otros, en fin, las conciben como actos bilaterales mixtos, combinación de procedimiento y de negocio .... Dice CARNELUTTI: ‘A parte emptoris es un verdadero y propio negocio jurídico ....A parte venditoris, en cambio, la cosa cambia, porque no es un propietario el que vende la cosa propia, sino un Oficial público que vende la cosa ajena, y por eso ejercita un *92 poder, no se vale de un derecho subjetivo, y así forma un procedimiento, no un negocio’.” (Citas omitidas.) El contrato de compraventa, Madrid, Ed. Tecnos, 1969, T. I, págs. 622-623.

 Cabe añadir que nuestra opinión en Piovanetti Doumont v. Martínez, 99 D.P.R. 663, 664-665 (1971), se expresa con cierta ambigüedad sobre la norma establecida en Ríos v. Banco Popular, 81 D.P.R. 378 (1959).

 El referido Art. 201 de la Ley Hipotecaria y del Registro de la Propiedad (Ley Hipotecaria) establece que aplican al procedimiento ordinario de ejecución de hipoteca los Arts. 202, 207(V) y (VI), 211, 220-224, 226 (excepto la frase sobre el requisito de confirmación), 227-229, 231, 232 y 234 (30 L.P.R.A. sees. 2702, 2707, 2711, 2720-2724, 2726, 2727-2729, 2731, 2732 y 2734).

 Dispone la Regla 51.3(b):
“(b) En las sentencias que se dicten en juicios sobre ejecución de hipotecas y otros gravámenes se ordenará que el demandante recupere su crédito, intereses y costas mediante venta de la finca sujeta al gravamen. Al efecto, se expedirá una orden al alguacil, disponiendo que proceda a venderla para satisfacer la sentencia, en la forma prescrita por la ley para la venta de propiedad bajo ejecución; y si no se encontrase la finca hipotecada o si el resultado de su venta fuese insuficiente para satisfacer la totalidad de la sentencia, entonces el alguacil procederá a recuperar el resto del dinero o remanente del importe de la sentencia sobre cualquiera otra propiedad del demandado, como en el caso de cualquiera otra ejecución ordinaria.” 32 L.P.R.A. Ap. III.

 “El tribunal, una vez otorgada la escritura de traspaso de la finca o derecho *99 hipotecado a instancia del rematante ordenará que se practiquen en el Registro de la Propiedad las cancelaciones de los asientos que procedan, incluso los hechos en favor de la persona que hubiere inscrito su derecho con posterioridad a la fecha de la anotación del procedimiento a que se refiere la see. 2709 de este título.” 30 L.P.R.A. see. 2731.

 “De acuerdo con las disposiciones legales vigentes sobre la reclamación del derecho de ‘Hogar Seguro’, efectuado y confirmado el remate y venta de una finca hipotecada deberá retenerse y depositarse la cantidad que las expresadas disposiciones ordenan. Igual medida se aplicará en caso de adjudicación, una vez confirmada, debiendo al efecto el adjudicatario entregar la suma correspondiente al alguacil o depositadla] en la secretaría del tribunal, antes de otorgarse la escritura de adjudicación judicial.” 30 L.P.R.A. sec. 2732.

 “ei procedimiento de ejecución regulado en las secciones anteriores será igualmente aplicable al caso en que deje de pagarse una parte del capital o de los intereses, cuyo pago debe hacerse en plazos diferentes, si venciere alguno de ellos, sin cumplir el deudor su obligación y siempre que tal estipulación conste inscrita. Si para el pago de algunos de los plazos del capital o de los intereses fuere necesario enajenar la finca hipotecada, y aún quedaren por vencer otros plazos de la obligación, se verificará la venta y se transferirá la finca o derecho al comprador con la hipoteca correspondiente a la parte del crédito que no estuviere satisfecha.” (Énfasis suplido.) 30 L.P.R.A. sec. 2728.