Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| CITIMORTGAGE, INC.<br><br>Parte Apelada<br><br>v.<br><br>LA SUCESIÓN DE ELBA RÍOS ROSA COMPUESTA POR JOSÉ RAFAEL RÍOS RÍOS, EDGARDO ENRIQUE RÍOS RÍOS, RAFAEL ENRIQUE RÍOS RÍOS, JULIO ENRIQUE RÍOS RÍOS; LA SUCESIÓN DE JOSÉ RAFAEL RÍOS RÍOS COMPUESTA POR **CARLOS JOSÉ RÍOS PIERLUISI** Y RICARDO ANDRÉS RÍOS PIERLUISI; CENTRO DE RECAUDACIÓN DE INGRESOS MUNICIPALES (CRIM), SECRETARIO DEL DEPARTAMENTO DE DESARROLLO URBANO Y VIVIENDA DE ESTADOS UNIDOS; ESTADOS UNIDOS DE AMÉRICA; DEPARTAMENTO DE HACIENDA<br><br>Parte Apelante | TA2026AP00094 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br><br>Caso Núm. BY2019CV00444<br><br><br>Sobre: Cobro de Dinero y Ejecución de Hipoteca por la Vía Ordinaria |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Rodríguez Flores, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 7 de abril de 2026.

Comparece el Sr. Carlos José Ríos Pierluisi (señor Ríos), mediante recurso de apelación y solicita que revoquemos la *Sentencia Sumaria* dictada el 11 de diciembre de 2025, y notificada al día siguiente, por el Tribunal de Primera Instancia (TPI), Sala Superior de Bayamón.[1] Mediante el referido dictamen, el TPI declaró

---

[1] *Sentencia Sumaria,* SUMAC en el recurso BY2019CV00444, entrada 221.

*ha lugar* la demanda de epígrafe y condenó al señor Ríos al pago de las sumas reclamadas.

El señor Ríos entiende que existen hechos materiales en controversia que impedían la adjudicación sumaria del caso, los cuales deben ser resueltos en un juicio plenario[2]. Por su parte, en su alegato en oposición, la parte apelada, CITIMORTGAGE, INC. (CITIMORTGAGE) indicó que presentó ante el foro apelado la prueba necesaria para que se dictara remedio sumario a su favor. Por tanto, solicita que se confirme la sentencia parcial apelada.[3]

Examinados los escritos a la luz del derecho aplicable y por los fundamentos que expondremos a continuación, se *confirma* la *Sentencia Sumaria* apelada.

## I.

El 30 de enero de 2019, CITIMORTGAGE incoó una *Demanda* contra la deudora obligacional y titular registral del inmueble objeto de la reclamación, doña Elba Ríos Rosa.[4] Arguyó que ésta debía $100,472.71 por concepto de principal de un pagaré, entre otras partidas, y que la deuda era líquida y exigible. Doña Elba Ríos Rosa falleció y, el 30 de abril de 2019, CITIMORTGAGE presentó *Demanda Enmendada* para sustituir a la fenecida por sus herederos, en calidad de demandados.[5] El 4 de febrero de 2022, CITIMORTGAGE presentó una *Segunda Demanda Enmendada* mediante la cual incluyó como parte demandada al señor Ríos como heredero.[6]

Luego de varios trámites procesales, incluida la repudiación de la herencia de doña Elba, por parte de los herederos, exceptuado

---

[2] *Apelación*, SUMAC-TA en el recurso TA2026AP00094, entrada 1.
[3] *Alegato en Oposición a Recurso de Apelación, Íd.,* entrada 5.
[4] *Demanda*, SUMAC en el recurso BY2019CV00444, entrada 1.
[5] *Demanda Enmendada, Íd.,* entrada 12.
[6] *Segunda Demanda Enmendada, Íd.*, entrada 114.

al señor Ríos, éste contestó la demanda el 5 de febrero de 2025, negando lo alegado.[7]

El 6 de marzo de 2025, CITIMORTGAGE presentó una *Moción de Sentencia Sumaria,* apoyada en la declaración jurada de un representante de la institución financiera y documentos acreditativos de la deuda.[8] En la moción, CITIMORTGAGE argumentó que no existían controversias en los hechos materiales propuestos y solicitó que se dictara sentencia a su favor que declarara que la parte demandada le adeudaba la suma de $100,472.71 de principal; intereses al 3.875%, que continúan acumulándose hasta el saldo total de la deuda; recargos a razón de 4% por cada pago vencido no recibido dentro de los quince (15) días después de la fecha de caducidad; primas por el seguro hipotecario y riesgo; recargos por demora; créditos accesorios; adelantos realizados en virtud de la escritura de hipoteca y cualquier otra cantidad pactada en ella desde la fecha de vencimiento hasta que se cumpla con el pago en su totalidad, y 10% del principal ($14,369.20) para costas, gastos y honorarios de abogado pactados, así como cualquier partida adicional incluida en el pagaré.

El 23 de julio de 2025, el señor Ríos presentó su oposición a la solicitud de sentencia sumaria.[9] En síntesis, sostuvo que existía controversia de hechos reales porque no inspeccionó el pagaré original, la deuda reclamada no era líquida ni exigible y la declaración jurada acreditativa de la deuda era insuficiente e inadmisible. Por ello, solicitó que se denegara la solicitud de CITIMORTGAGE. En la declaración jurada que acompañó con su oposición, indicó que aprobó el periodo de prueba como primer paso para una modificación; que nunca recibió de la institución

---

[7] *Contestación a [la] Segunda Demanda Enmendada, Íd.*, entrada 181.
[8] *Moción de Sentencia Sumaria, Íd.*, entrada 188.
[9] *Oposición a [la] Moción de Sentencia Sumaria, Íd.*, entrada 210.

financiera los documentos finales para completar el proceso; que, a pesar de haberlo notificado, la institución bancaria no realizó el cambio en su dirección postal; y que dicha institución le ha devuelto los pagos posteriores a la aprobación del periodo probatorio, por lo que desconoce la cuantía de la deuda. El señor Ríos incluyó copia de los cheques que alegó le fueron devueltos sin cobrar.

El 12 de diciembre de 2025, el foro primario notificó la *Sentencia Sumaria* objeto del presente recurso, mediante la cual, a base de los documentos presentados, concluyó que no existía controversia sobre los hechos del caso y formuló las siguientes determinaciones de hechos:

> El 25 de octubre de 2002, Elba Ríos Rosa suscribió un Pagaré a favor de Pan American Financial Corp., mediante el cual se obligó a pagarle la cantidad de $143,692.00 de principal más intereses al 6 ½ % anual, recargos a razón del 4% de cada pago vencido no recibido dentro de los quince (15) días después de la fecha de vencimiento, más el 10% del principal para costas, gastos y honorarios de abogado.
>
> Para garantizar el pagaré antes mencionado, Elba Ríos Rosa, otorgó una Primera Hipoteca el 25 de octubre de 2002 por la suma principal de $143,692.00 de principal más intereses al 6 ½ % anual, recargos a razón del 4% de cada pago vencido no recibido dentro de los quince (15) días después de la fecha de vencimiento, más el 10% del principal para costas, gastos y honorarios de abogado en caso de reclamación judicial según consta de Escritura Número 70 otorgada en San Juan, Puerto Rico, ante el Notario Público José M. Birriel Bareto sobre la siguiente propiedad:
>
>> ---PROPIEDAD HORIZONTAL: Apartamento residencial de un nivel forma sustancialmente rectangular, localizado en el tercer piso del edificio A, identificado con el número A-312 en el Condominio Monteverde, situado en el Barrio Frailes del Municipio de Guaynabo, Puerto Rico, con un área aproximada de 1432.09 pies cuadrados, equivalentes a 133.04 metros cuadrados. En lindes por el NORTE, en una distancia aproximada de 7.10 metros con pared exterior del edificio que da hacia elemento exterior; por el SUR, en una distancia aproximada de 7.20 metros con pared exterior que mira hacia el frente del edificio; por el ESTE, en una distancia aproximada de 17.30 metros con pared donde se encuentra su entrada y lo separa de un pasillo común y el apartamento A-311 y por el OESTE, en una distancia aproximada de 13.20 metros con

pared que lo separa del apartamento B-309 y elemento exterior. Consiste de sala-comedor, cocina, balcón, pasillo, tres dormitorios, dos baños, área aproximada para lavandería y "closets". La puerta de entrada está localizada en su colindancia Este, por donde tiene acceso a la vía pública. Contiene una escalera en espiral en el balcón que conduce a la azotea, que está delimitada por verjas o puntos, conforme surge de los planos del proyecto, cuyo uso le corresponde exclusivamente. Le corresponde un porcentaje en los elementos comunes generales de 0.178%. Tiene asignado el estacionamiento número A-312 para dos autos.----

---Inscrita al folio 291 del tomo 1131 de Guaynabo, finca número 39731, Registro de la Propiedad de Puerto Rico, Sección de Guaynabo.------------------

La hipoteca consta debidamente inscrita en el registro de la propiedad según surge de la Certificación Registral presentada por la parte demandante.

La hipoteca y pagaré anteriormente descritos fueron objeto de una modificación interna entre la institución bancaria, y la deudora hipotecaria, variando los términos originales como se describe a continuación:

> a. Nuevo balance de principal total será de $107,204.43.
> b. El porciento de interés se modifica a 3.875%.
> c. El primer pago mensual bajo los términos de la modificación será el 1ro. de septiembre de 2015.

CITIMORTGAGE, INC., es la entidad con derecho a exigir el cumplimiento del instrumento por ser su tenedor.

La parte demandada ha incumplido con su obligación y adeuda a CITIMORTGAGE, INC., la suma de $100,472.71 de principal; intereses al 3.87500%, los cuales continúan acumulándose hasta el saldo total de la deuda, recargos a razón del 4% de cada pago vencido no recibido dentro de los quince (15) días después de la fecha de vencimiento; más las primas por seguro hipotecario y riesgo; recargos por demora; los créditos accesorios; adelantos hechos en virtud de la escritura de hipoteca y cualquiera otras cantidades pactadas en la escritura de hipoteca, desde la fecha antes mencionada y hasta la fecha de total pago de las mismas, más el 10% del principal para costas, gastos y honorarios de abogados pactado.

La deuda anteriormente relatada se encuentra vencida, es líquida y exigible.

La parte demandante ha realizado gestiones con el demandado para obtener el pago de las sumas antes indicadas, resultando éstas infructuosas.

La parte demandada fue debidamente interpelada.

> No se encuentra ante la consideración de la parte demandante una solicitud completada bajo el programa de "Loss Mitigation" que provoque la paralización de los procedimientos, por lo que no es de aplicación la paralización de los procedimientos bajo las disposiciones del Reglamento X y la Ley 169-2016.

De tal forma, el TPI declaró *ha lugar* a la demanda en cobro de dinero y ejecución hipotecaria, condenando al señor Ríos al pago de las sumas reclamadas, bajo apercibimiento de que el incumplimiento conllevaría, previo a solicitud de parte y de conformidad con lo dispuesto en ley y los reglamentos aplicables, la ejecución y venta en subasta pública del inmueble hipotecado para satisfacer la deuda. [10]

Inconforme con dicho decreto, el 22 de diciembre de 2025, el señor Ríos presentó una reconsideración.[11] Esta fue denegada por el foro apelado, mediante una *Resolución* pronunciada el 25 de diciembre de 2025, y notificada y archivada en autos el 29 de diciembre de 2025.[12]

Insatisfecho aún, el señor Ríos presentó su recurso de apelación ante esta Curia el 28 de enero de 2026 y señaló que el TPI cometió el siguiente error:

> Erró el Tribunal de Primera Instancia al declarar ha lugar [a] la Moción de Sentencia Sumaria presentada por la parte apelada.

El señor Ríos entiende que existen hechos materiales en controversia que impedían la resolución sumaria del pleito. En lo específico, arguye que no inspeccionó el pagaré original, que la deuda reclamada no es líquida ni exigible y que la declaración jurada acreditativa de la deuda es insuficiente e inadmisible para sostener las alegaciones.

Por su parte, mediante *Alegato en Oposición a Recurso de Apelación* presentado el 19 de marzo de 2026, CITIMORTGAGE

---

[10] *Sentencia Sumaria, Íd.*, entrada 221.
[11] *Moción de Reconsideración de [la] Sentencia Sumaria, Íd.*, entrada 222.
[12] *Resolución, Íd.*, entrada 225.

indicó que acompañó a su solicitud toda la prueba necesaria para que se le concediera el remedio sumario solicitado. Además, puntualizó que el señor Ríos tenía que refutar los hechos alegados en la solicitud de sentencia sumaria y fundamentar su posición con prueba que pusiera en controversia los hechos presentados, pero no lo hizo, razón por la cual arguye que procede confirmar el dictamen apelado.

**II.**

**A.**

El mecanismo de sentencia sumaria, regulado por la Regla 36 de las de Procedimiento Civil,[13] le permite al tribunal disponer de un caso sin celebrar una vista en su fondo.[14]

La Regla 36.1 de las de Procedimiento Civil,[15] establece que una moción de sentencia sumaria debe estar fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes.[16] Por tanto, el tribunal podrá dictar sentencia sumaria si de las alegaciones, deposiciones, contestaciones, interrogatorios y admisiones ofrecidas, junto con las declaraciones juradas, si las hubiere, surge que no existe ninguna controversia real sobre los hechos materiales y esenciales del caso, y solo resta por resolver una controversia de estricto derecho.[17]

Por otro extremo, la sentencia sumaria resulta improcedente cuando: (1) existen hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido

---

[13] 32 LPRA Ap. V, R. 36.

[14] *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 334 (2021); *León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020); *Abrams Rivera v. E.L.A.,* 178 DPR 914, 932 (2010); *Nieves Díaz v. González Massas,* 178 DPR 820, 847 (2010); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

[15] 32 LPRA Ap. V, R. 36.1.

[16] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 335; *Rodríguez García v. UCA,* 200 DPR 929, 940 (2018).

[17] 32 LPRA Ap. V, R. 36.3(e); *León Torres v. Rivera Lebrón,* supra; *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 430 (2013); *Mejías et al. v. Carrasquillo et al.,* 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión*, supra, pág. 214; *González Aristud v. Hosp. Pavía,* 168 DPR 127, 137-138 (2006).

refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial, o (4) como cuestión de derecho, no proceda.[18]

La parte promovida tiene el deber de refutar los hechos alegados con prueba que controvierta la exposición de la parte que solicita la sentencia sumaria.[19] En este sentido, la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación. Dicha parte está obligada a controvertir la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente en su solicitud, ya que, de no hacerlo, corre el riesgo de que se dicte sentencia sumaria en su contra, de esto proceder en derecho.[20]

Sin embargo, el hecho de que la otra parte no presente prueba que controvierta la evidencia presentada por la parte promovente de la moción de sentencia sumaria, no implica necesariamente que dicha moción procederá automáticamente si realmente existe una controversia sustancial sobre hechos esenciales y materiales.[21]

Asimismo, toda inferencia que se haga de los hechos incontrovertidos debe efectuarse de la manera más favorable a la parte que se opone a esta.[22] A tono con este principio, el Tribunal Supremo ha indicado que, "[a]l considerar la moción de sentencia sumaria[,] se tendrán como ciertos los hechos no controvertidos que consten en los documentos y las declaraciones juradas ofrecidas por la parte promovente".[23]

En el caso de un foro apelativo, este debe utilizar los mismos criterios que el tribunal sentenciador para determinar si procede

---

[18] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, págs. 335-336; *Mejías et al. v. Carrasquillo et al.,* supra, pág. 299; *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714 (1986).

[19] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 336; *León Torres v. Rivera Lebrón,* supra, pág. 44; *Ramos Pérez v. Univisión,* supra, pág. 215.

[20] *León Torres v. Rivera Lebrón,* supra, pág. 43.

[21] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 337.

[22] *Mejías et al. v. Carrasquillo et al.*, supra, pág. 300; *Corp. Presiding Bishop CJC of LDS v. Purcell,* supra, pág. 721.

[23] *Piñero v. A.A.A.,* 146 DPR 890, 904 (1998).

dictar sentencia sumaria, empero: (1) solo puede considerar los documentos que se presentaron ante el foro de primera instancia, y (2) solo puede determinar si existe o no alguna controversia genuina de hechos materiales y si el derecho se aplicó de forma correcta.[24]

Así pues, por estar en la misma posición que el foro primario al momento de revisar las solicitudes de sentencia sumaria, el Tribunal Supremo de Puerto Rico estableció un estándar específico, que, como foro apelativo, debemos utilizar. A tales efectos, en *Meléndez González, et al. v. M. Cuebas*,[25] indicó que, de entrada, debemos revisar que tanto la moción de sentencia sumaria, así como su oposición, cumplan con los requisitos de forma codificados en la Regla 36 de las de Procedimiento Civil.[26] Subsecuentemente, si existen hechos materiales controvertidos, "el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos".[27] Por el contrario, si encontramos que los hechos materiales del caso son incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente la norma jurídica aplicable a la controversia que tuvo ante sí.[28]

El mecanismo de sentencia sumaria es un remedio discrecional que procederá solo cuando el tribunal quede claramente convencido de que tiene ante sí documentos no controvertidos, que no existen controversias sobre hechos materiales y esenciales, y que, por lo tanto, lo que resta es aplicar el derecho, ya que una vista en los méritos resultaría innecesaria.[29]

---

[24] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, págs. 337-338; *Const. José Carro v. Mun. Dorado,* 186 DPR 113, 129 (2012).

[25] 193 DPR 100 (2015).

[26] *Íd.*, pág. 118.

[27] *Íd.*, pág. 119.

[28] *Íd.*

[29] *Vera v. Dr. Bravo,* 161 DPR 308, 334 (2004). Véase *González Santiago v. Baxter Healthcare,* 202 DPR 281, 290 (2019); *Pérez Vargas v. Office Depot,* 203 DPR 687, 699 (2019).

Hay que señalar que una sentencia sumaria, por constituir una decisión en los méritos,[30] es el precedente de cosa juzgada cuando se opone entre partes debidamente relacionadas.[31] Por ello, se ha advertido que, antes de resolver una controversia por la vía sumaria, el juzgador habrá de ponderar cuidadosamente al respecto, pues "mal utilizada, puede prestarse para despojar a un litigante de su 'día en corte', principio elemental del debido proceso de ley".[32]

De otra parte, el Tribunal Supremo ha señalado que no es aconsejable dictar sentencia sumaria en casos cuyas controversias versan esencialmente sobre asuntos de credibilidad o involucren aspectos subjetivos, como lo es la intención, los propósitos mentales o la negligencia.[33] Sin embargo, también se ha dicho que ello no impide la utilización del mecanismo de sentencia sumaria en las reclamaciones que requieran elementos subjetivos o de intención cuando de los documentos que serán considerados en la solicitud de sentencia sumaria surja que no existe controversia en cuanto a los hechos materiales.[34]

**B.**

La hipoteca es el derecho real accesorio e indivisible de realización de valor que se constituye con la inscripción registral que garantiza una obligación monetaria y que grava bienes inmuebles que pertenecen o son ocupados por un propietario.[35] Para que la hipoteca nazca a la vida jurídica y goce de eficacia *erga omnes*, es

---

[30] El efecto de la aplicación de la doctrina de cosa juzgada es que la sentencia emitida en un pleito anterior impide que se litiguen posteriormente, entre las mismas partes y sobre las mismas causas de acción y cosas, las controversias ya litigadas y adjudicadas, y aquellas que se pudieron haber litigado. *Mun. De San Juan v. Bosque Real, S.E.,* 58 DPR 743, 769 (2003).

[31] *Vera v. Dr. Bravo*, supra, pág. 335.

[32] *González v. Alicea, Dir. Soc. Asist. Legal,* 132 DPR 638, 646-647 (1993).

[33] *Aponte Valentín et al. v. Pfizer Pharm.*, 208 DPR 263, 278 (2021).

[34] *Íd.*

[35] Artículo 1011 del Código Civil, Ley Núm. 55-2020, 31 LPRA sec. 8731; *Dist. Unidos Gas v. Sucn. Declet Jiménez,* 196 DPR 96, 111 (2016); *Westernbank v. Registradora,* 174 DPR 779, 784 (2008).

imperativo que esta se plasme en una escritura pública que quede debidamente inscrita en el Registro de la Propiedad.[36]

Aparte de la inscripción registral y el requisito de forma de la escritura pública, la hipoteca tiene otros requerimientos fundamentales: (1) se constituye para asegurar el cumplimiento de una obligación principal; (2) lo hipotecado es propiedad del deudor hipotecario; (3) quienes constituyen la hipoteca tiene la potestad de disponer de sus bienes o están legalmente autorizados para ello.[37]

Como la hipoteca es accesoria a la obligación principal, está sujeta a la existencia de esta, por lo cual se extingue cuando el crédito primordial se esfume.[38]

Ahora bien, cuando el deudor hipotecario incumple con su obligación personal, el acreedor hipotecario tiene una acción de ejecución hipotecaria junto con su reclamo en cobro de dinero, debido a la naturaleza mixta de la hipoteca.[39] Por ello, el acreedor hipotecario podrá acumular ambas acciones al incoar su demanda ante un foro judicial. Así, nuestro Tribunal Supremo explica que:

> [E]n una relación jurídica de crédito hipotecario coexisten dos (2) elementos: el crédito y la *hipoteca*. '[E]l elemento crédito origina la correspondiente acción personal, que conduce o puede conducir para su efectividad a la actuación procesal dirigida a la realización dineraria en los bienes necesarios del patrimonio del deudor, o de los fiadores o responsables subsidiarios, siempre, empero, que se prescinda de la hipoteca adjunta. Del elemento garantizador de la hipoteca deriva la correspondiente responsabilidad real, cuya efectuación, siempre a base de contemplar también el crédito asegurado, se consigue por el ejercicio de la acción hipotecaria, de carácter real, y

---

[36] 31 LPRA sec. 8734; *SLG Haedo-López v. SLG Roldan-Rodríguez*, 203 DPR 324, 342 (2019), citando a L. R. Rivera Rivera, *Derecho Registral Inmobiliario Puertorriqueño*, 3ra. ed., San Juan, Jurídica Editores, 2012, pág. 487; véase 30 LPRA sec. 6084.

[37] *Dist. Unidos Ga. v. Sucn. Declet Jiménez*, supra.

[38] *Íd.*, pág. 112. La obligación principal garantizada por la hipoteca es comúnmente un instrumento negociable; específicamente, un pagaré, Quien inste la acción doble de cobro de dinero y ejecución de hipoteca habrá de ser aquella persona autorizada para exigir el cumplimiento de lo pactado y, usualmente, es el tenedor del pagaré. Véase *Ley de Transacciones Comerciales*, Ley Núm. 208-1995, 19 LPRA sec. 601.

[39] *Atanacia Corp. v. J.M. Saldaña, Inc.*, 133 DPR 284, 292 (1993). Véase 31 LPRA secs. 8678, 9301.

hecha valer a través de una variedad de procedimientos de ejecución en nuestro sistema.[40]

Entonces, de ser favorable el dictamen judicial hacia el acreedor hipotecario, este podrá ejecutar en pública subasta los inmuebles gravados junto con los accesorios y acuerdos incluidos en la escritura pública de la hipoteca. Ahora bien, es imperativo que el instrumento público mencionado incluya el tipo mínimo, que es el valor más bajo por el cual puede ser enajenado el inmueble en la primera subasta; de no contenerlo, la hipoteca sería nula.[41] El tipo mínimo responde a la necesidad de "cerrar la puerta a la grave injusticia que representa la adquisición por el acreedor de la finca hipotecada mediante oferta en subasta de parte del crédito adeudado, adjudicándose el inmueble por precio irrisorio y libre para perseguir otros bienes de su deudor por el balance impagado de su crédito".[42]

### III.

En el caso de marras, debemos resolver si procedía dictar sentencia sumaria y declarar *ha lugar* a la demanda en cobro de dinero y ejecución hipotecaria entablada por CITIMORTGAGE.

Según expuesto, podrá dictarse sentencia sumaria cuando no exista ninguna controversia real sobre los hechos materiales y esenciales del caso y, además, si el derecho aplicable lo justifica.

Así pues, la parte que solicita que se dicte sentencia sumaria en un pleito está obligada a demostrar, fuera de toda duda, la inexistencia de una controversia real sobre todo hecho pertinente que, a la luz del derecho sustantivo, determinaría una sentencia a su favor como cuestión de ley. Para ello, es ineludible que la parte

---

[40] *PR Prod. Credit Assoc. v. Registrador*, 123 DPR 231, 243 (1989), citando a Roca Sastre, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. IV, Vol. 2, pág. 1021.

[41] *S.L.G. Sánchez v. S.L.G. Valentín*, 186 DPR 503 (2012); Artículo 80 de la *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico*, Ley Núm. 210-2015, 30 LPRA sec. 6107.

[42] *Coop. Ahorro y Créd. v. Registrador* 142 DPR 369, 379 (1997), citando a *Junta Retiro Maestros v. Registrador*, 109 DPR 569, 571 (1980).

promovente consigne los hechos en párrafos debidamente enumerados y que, para cada uno de ellos, especifique la página o el párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya.

En su solicitud de sentencia sumaria, CITIMORTGAGE enumeró los hechos materiales que no están en controversia y señaló el correspondiente anejo para cada uno. Además, incluyó como prueba: copia del pagaré original, la escritura de hipoteca, la modificación interna de la hipoteca, una certificación registral sobre la constitución de la hipoteca, así como una declaración jurada sobre lo adeudado, la fecha de incumplimiento, la tasa de interés y la fecha a partir de la cual se calcula ese interés, el porciento a cobrarse por cargos por mora y honorarios de abogados pactados.[43]

Por otro lado, el señor Ríos no cumplió con su deber de refutar los hechos alegados, con prueba que controvirtiera la exposición de CITIMORTGAGE. En su oposición, el señor Ríos no citó específicamente los párrafos según enumerados por el promovente que entiende están en controversia, ni detalló la prueba admisible que sostuviese su impugnación, con cita a la página o sección pertinente. Tampoco sometió hechos materiales adicionales que impidieran que se dictara sentencia sumaria, como lo sería demostrar el pago de lo adeudado.

El señor Ríos no presentó documento alguno que controvirtiera la deuda reclamada. Solamente presentó copias de cheques que alegó le fueron devueltos sin cobrar, los cuales, evidentemente, no fueron aplicados a la deuda. De hecho, en su moción en oposición a la solicitud de sentencia sumaria, admitió que ha continuado efectuando pagos que la institución bancaria no

---

[43] Contrario a lo argüido por el señor Ríos y respecto al valor probatorio de la declaración jurada acreditativa de la deuda, ésta no constituye prueba de referencia por ser un récord de negocio admisible conforme a la Regla 805(f) de Evidencia, 32 LPRA Ap. VI R.805(f), como una excepción a la prueba de referencia.

ha acreditado a la deuda.[44] De los documentos surge, además, que el señor Ríos aprobó el periodo probatorio del proceso de mitigación de pérdida, pero no hay prueba de que éste hubiese completado el proceso para lograr un acuerdo final de modificación de la deuda.[45] En una aparente justificación para no haber recibido los documentos finales para completar el proceso de modificación de la deuda, aludió que notificó a la institución bancaria un cambio en su dirección postal, pero no presentó evidencia de las gestiones realizadas a tales efectos.

En consecuencia, el tribunal apelado no erró al dictar sentencia sumaria a favor de CITIMORTGAGE, ya que la parte opositora de la moción, señor Ríos, no respondió de forma detallada y específica a la solicitud debidamente formulada por dicho banco.

A su vez, CITIMORTGAGE también demostró que procedía, en derecho, dictar sentencia a su favor. En específico, cumplió con su deber de exponerle al tribunal la existencia de una deuda vencida, líquida y exigible, y la validez de la hipoteca que la garantiza. Al ser el acreedor hipotecario, tiene el derecho de hacer efectivo su crédito contra la Sucesión *et al.* y, además, posee un derecho real sobre la propiedad en controversia.

En conclusión, CITIMORTGAGE logró establecer, mediante prueba documental y declaración jurada, el hecho de que la deuda es líquida y exigible, y que la Sucesión *et al.,* incumplió con los pagos del préstamo hipotecario. Por tanto, viene obligada a responder y compete que, previo a solicitud de parte y de conformidad con lo dispuesto en ley, se ejecute la propiedad hipotecada en pública subasta para satisfacer la acreencia, según detallado por el foro apelado.

---

[44] *Oposición a [la] Moción de Sentencia Sumaria,* SUMAC en el recurso BY2019CV00444, entrada 210, pág. 2, inciso 6(b).
[45] *Íd.*, Anejos de la *Oposición a [la] Moción de Sentencia Sumaria.*

Colegimos, pues, que el foro primario no erró al justipreciar que la petición de sentencia sumaria de CITIMORTGAGE era conforme a derecho y al declarar *ha lugar* a la demanda en cobro de dinero y ejecución de hipoteca.

**IV.**

En virtud de lo anterior, se *confirma* la *Sentencia Sumaria* apelada.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones